REX ALAN BRYANT, HENRY A. BRYANT, AND HILDA BRYANT, PLAINTIFFS v. ANDY W. ADAMS, DOING BUSINESS AS ANDY'S SALE & RENTAL, ANDY'S SALE & RENTAL, INC., ASR MANUFACTURING COMPANY, ADTEC CORPORATION, AND ADTEC SALES, INC.; ASR MANUFACTURING COMPANY, FORMERLY KNOWN AS ANDY'S SALE & RENTAL AND ANDY'S SALE & RENTAL, INC.; ADTEC SALES, INC., FORMERLY KNOWN AS ADTEC CORPORATION, AND A SUCCESSOR CORPORATION TO CERTAIN ASSETS OF ANDY'S SALE & RENTAL, AND ANDY'S SALE & RENTAL, INC., NOW KNOWN AS ASR MANUFACTURING COMPANY; CARL WICKER AND SHIRLEY WICKER, DOING BUSINESS AS WESTERN AUTO ASSOC., DEFENDANTS

No. 9317SC57
No. 9317SC780
No. 9317SC1113

(Filed 4 October 1994)

## 1. Limitations, Repose, and Laches § 119 (NCI4th)— statute of repose—products liability—minor

The statute of repose for a products liability action, N.C.G.S. § 1-50(6), is tolled by the operation of N.C.G.S. § 1-17, the statutory provision which allows a minor to bring suit within three years of the date upon which the minor reaches majority. The express intent of the legislature is to provide minors and others with disabilities a longer time in which to file suit for injuries caused by a defective product.

**Am Jur 2d, Limitation of Actions §§ 182 et seq.**

## 2. Limitations, Repose, and Laches § 119 (NCI4th)— products liability action—statute of repose—tolled

The statute of limitation and repose was tolled for plaintiff Rex Bryant and the trial court erred by granting defendant Andy Adams' motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6), where Rex Bryant was fourteen years old on 27 November, 1986,

BRYANT v. ADAMS

[116 N.C. App. 448 (1994)]

when he was injured on a trampoline manufactured by defendant; a guardian ad litem was appointed on 27 November 1989; and suit was filed on 11 March 1992, less than two and a half years after the appointment of the guardian ad litem. As a minor, Rex was required to file suit within three years after the earlier of attaining majority or the appointment of a guardian ad litem.

**Am Jur 2d, Limitation of Actions §§ 182 et seq.**

**Appointment of guardian for incompetent or infant as affecting running of statute of limitations against ward. 86 ALR2d 965.**

3. **Limitations, Repose, and Laches § 10 (NCI4th)— statute of repose—estoppel—pleadings—sufficiently stated**

In an action for injuries sustained on a trampoline, the trial court erred by granting defendant Andy Adams' motion to dismiss the claim of the victim's parents under N.C.G.S. § 1A-1, Rule 12(b)(6) based on the statute of limitations where plaintiffs' pleadings sufficiently stated a claim for equitable estoppel in that they alleged that Adams thwarted discovery efforts regarding specific facts and refused to answer questions or provide documentation and that Adams was the only individual who possessed the information plaintiffs sought. Plaintiffs arguably did not file suit against Adams sooner because of Adams' refusal to answer plaintiffs' request for discovery and plaintiffs were obviously prejudiced.

**Am Jur 2d, Limitation of Actions §§ 422 et seq.**

**Tolling of statute of limitations, on account of minority of injured child, as applicable to parent's or guardian's right of action arising out of same injury. 49 ALR4th 216.**

4. **Trial § 19 (NCI4th)— motion to continue—discovery—discretion of court**

The trial court did not abuse its discretion by denying plaintiffs' motion under N.C.G.S. § 1A-1, Rule 56(f) to continue the discovery period where, although there was outstanding discovery, it was unrelated to the grounds on which summary judgment was granted, and the discovery period provided by local rules had expired.

**Am Jur 2d, Continuance §§ 8 et seq.**

BRYANT v. ADAMS

[116 N.C. App. 448 (1994)]

5. **Corporations § 208 (NCI4th)— trampoline—manufacturer—successor corporation—mere continuation**

The trial court erred when it granted summary judgment for defendant ADtec Sales, Inc. in a products liability action involving a trampoline where ADtec contended that it had not manufactured the trampoline but plaintiffs forecast evidence that ADtec was a mere continuation of the manufacturer in that ADtec received assets from the manufacturer for questionable consideration and has the same shareholder, as well as common directors and officers.

**Am Jur 2d, Corporations §§ 2862 et seq.**

**Products liability: liability of successor corporation for injury or damage caused by product issued by predecessor. 66 ALR3d 824.**

**Successor products liability: form of business organization of successor or predecessor as affecting successor liability. 32 ALR4th 196.**

6. **Pleadings § 398 (NCI4th)— products liability—trampoline—statute of limitations—addition of party—no relation back**

The trial court did not err in a products liability action involving a trampoline by granting summary judgment for defendant ASR Manufacturing against the victim's parents based on the statute of limitations, but erred by granting the motion against the victim, where the trampoline was sold to Herbert and Annie Bryant, the uncle and aunt of the victim, on 2 July 1984; the injury occurred on 27 November 1986; a guardian ad litem was appointed on 27 November 1989; suit was filed that same day against ADtec; plaintiffs were allowed to amend their complaint to add ASR as an additional defendant on 16 July 1990; and plaintiffs took a voluntary dismissal on 11 March 1992 and refiled one year later. The victim's (Rex Bryant's) claims are not time barred because of the tolling of the statute of limitation and the statute of repose pursuant to N.C.G.S. § 1-17. However, Rex's parents cannot meet the fourth element of the test in *Ring Drug Co. v. Medicorp Enterprises*, 96 N.C. App. 277, for determining when a new party may be added after the limitations period has run in that ASR could not have had notice through ADtec before the statute of limitations expired because, while suit was filed against

BRYANT v. ADAMS

[116 N.C. App. 448 (1994)]

ADtec on the last day of the limitations period, ADtec was not served prior to the expiration of the period.

**Am Jur 2d, Pleading §§ 337 et seq.**

7. **Products Liability § 13 (NCI4th); Negligence § 98 (NCI4th)— trampoline—duty of seller to warn**

The trial court erred by granting summary judgment dismissing plaintiffs' negligence claims against the sellers of a trampoline, the Wickers, where questions of fact existed in that the Wickers contend that the dangers of which they were aware are open and obvious dangers to users exercising reasonable care resulting in no duty on the part of the Wickers to warn, while plaintiffs submitted an affidavit from an expert witness that the dangers were not apparent, and the Wickers contend that oral warnings were given to the purchaser of the trampoline while the purchaser disputed whether the warnings had been given. Finally, while the sellers contended that failure to warn was not the proximate cause of the injuries, the victim stated that he would have followed instructions if he had been aware of the dangers.

**Am Jur 2d, Negligence § 21; Products Liability §§ 294, 313 et seq.**

**Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury. 76 ALR2d 9.**

**Products liability: trampolines and similar devices. 76 ALR4th 171.**

8. **Sales § 144 (NCI4th)— trampoline—breach of warranty claim—summary judgment—no warranty**

The trial court did not err in an action arising from an injury suffered on a trampoline by granting summary judgment for the sellers on plaintiffs' breach of warranty claims where the only express warranties which plaintiffs claim were made were printed on sales literature which applied only to round trampolines. The oval trampoline, upon which plaintiff was injured, contained no such warranties.

**Am Jur 2d, Sales §§ 787-789.**

9. **Sales § 145 (NCI4th)— trampoline—breach of implied warranty of merchantability—summary judgment**

The trial court erred in an action arising from an injury suffered on a trampoline by granting summary judgment for the sellers on plaintiffs' claim for breach of the implied warranty of merchantability where plaintiffs alleged that the warranty was breached because the trampoline was sold with no instructions for proper use, no warnings of potential hazards, virtually no safety instructions, and was not fit for foreseeable users. North Carolina law allows an action for breach of the implied warranty of merchantability for failure to warn. While plaintiffs argue that the warnings were not sufficient because they had faded from exposure to weather, they were there at the time of sale. However, the victim's deposition testimony that he would have heeded any warnings and safety recommendations had they been adequately provided raises a question of fact as to whether the injuries were proximately caused by the failure to warn.

**Am Jur 2d, Sales §§ 787-789.**

10. **Sales § 138 (NCI4th)— trampoline—breach of implied warranty of merchantability—privity—guest**

The trial court erred in an action arising from an injury suffered on a trampoline by granting summary judgment for the sellers on the implied warranty of merchantability where the trampoline was owned by the victim's uncle; it is undisputed that the victim was not part of his uncle's household; and an issue of fact exists as to whether the victim was a guest of his uncle such that he would be in privity to sue the sellers for breach of implied warranty of merchantability.

**Am jur 2d, Sales § 708.**

**Privity of contract as essential to recovery in action based on theory other than negligence, against manufacturer or seller of product alleged to have caused injury. 75 ALR2d 39.**

11. **Sales § 106 (NCI4th)— trampoline—breach of implied warranty of merchantability—notice**

The trial court erred in an action arising from an injury suffered on a trampoline by granting summary judgment for the sellers on the implied warranty of merchantability where the sellers assert that plaintiffs failed to give notice as required by N.C.G.S.

BRYANT v. ADAMS

[116 N.C. App. 448 (1994)]

§ 25-2-607(3)(a), but there was an issue of fact as to whether the notice was seasonable. What constitutes a reasonable time depends upon the facts of each case and the policies underlying the notice requirement.

**Am Jur 2d, Sales §§ 1207 et seq.**

**Requirement of notice, by buyer of goods, of breach of warranty as applicable to actions for personal injury. 6 ALR3D 1371.**

12. **Products Liability § 17 (NCI4th)— trampoline—contributory negligence—summary judgment—not appropriate**

The issue of contributory negligence was properly for the jury in an action arising from an injury suffered on a trampoline. N.C.G.S. § 99B-4.

**Am Jur 2d, Products Liability §§ 924 et seq.**

**Contributory negligence or assumption of risk as defense to action for personal injury, death, or property damage resulting from alleged breach of implied warranty. 4 ALR3d 501.**

**Products liability: contributory negligence or assumption of risk as defense in negligence action based on failure to provide safety device for product causing injury. 75 ALR4th 443.**

13. **Products Liability § 5 (NCI4th)— trampoline—strict liability—summary judgment for seller**

Summary judgment was properly granted for the seller on the issue of strict liability arising from an injury suffered on a trampoline. North Carolina expressly rejects strict liability in products liability actions.

**Am Jur 2d, Products Liability §§ 5 et seq., 528 et seq.**

Appeal by plaintiffs from orders and judgments entered 17 June 1992, 5 January 1993, 30 January 1993, and 3 August 1993 by Judge James M. Long in Surry County Superior Court. Heard in the Court of Appeals 30 November 1993 and 15 April 1994.

*Max D. Ballinger for plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, by Dewey W. Wells, Nathanael K. Pendley, and Mary S. Pollard, for defendant-appellees.*

**BRYANT v. ADAMS**

[116 N.C. App. 448 (1994)]

MARTIN, Judge.

Plaintiffs seek to recover damages as compensation for injuries sustained by Rex Bryant allegedly due to negligence and breach of express and implied warranties by defendants. A summary of the factual allegations and procedural history of this case, as gleaned from the record before us, follows: In the late 1970's and early 1980's Andy Adams operated a small equipment rental shop in Georgia. In 1980 he began manufacturing and selling trampolines under the name "Andy's Sales," later incorporated as "Andy's Sale and Rental, Inc." The business operated under the name "Andy's Sales" or "Andy's Sale and Rental."

In 1987, Adams changed the marketing portion of "Andy's Sale and Rental, Inc." to ADtec Corp., but continued to manufacture the trampolines under the name "Andy's Sale and Rental, Inc." In 1989, Adams changed the name of ADtec Corp. to ADtec Sales, Inc., and the name of "Andy's Sale and Rental, Inc." was changed to ASR Manufacturing Co.

In 1984, Adams, doing business as either "Andy's Sales" or "Andy's Sale and Rental, Inc.," manufactured and sold a "Well-Built" trampoline to Carl and Shirley Wicker, d/b/a Western Auto Associates in Mocksville, North Carolina. On 2 July 1984, the Wickers sold the "Well-Built" trampoline to Rex Bryant's uncle, Herbert Bryant. On 27 November 1986, Rex Bryant, who was fourteen years old at the time, was using the trampoline when he sustained injuries which left him a virtual quadriplegic. On 27 November 1989, a guardian ad litem was appointed for Rex for the purpose of bringing suit against the manufacturer and seller of the trampoline. That same day suit was filed by Rex Bryant and his parents, Henry A. and Hilda Bryant against defendants ADtec Sales, Inc., and the Wickers.

On 16 July 1990, plaintiffs were allowed to amend their complaint to add ASR Manufacturing Co. as an additional defendant. ADtec moved for summary judgment on the grounds that it did not manufacture or sell the trampoline. ASR moved for summary judgment on the grounds that plaintiffs' claim was barred by the three year statute of limitations in G.S. § 1-52(5) and the six year statute of repose in G.S. § 1-50(6). Prior to a hearing on these motions, plaintiffs submitted to a voluntary dismissal. On 11 March 1992, within a year of the voluntary dismissal, plaintiffs refiled their claims against ADtec, ASR and the Wickers. The complaint also named, for the first time, Andy W. Adams. All of plaintiffs' claims against defendants were based on

negligent failure to properly or sufficiently warn of the dangers involved in the use of a trampoline, breach of express and implied warranties, and strict liability. All defendants moved for summary judgment.

On 17 June 1992, the trial court allowed Andy Adams' motion to dismiss, denying plaintiffs' motion to extend time for discovery and to postpone a hearing on Adams' motion for summary judgment until discovery could be completed. On 5 January 1993, the trial court denied plaintiffs' motion to extend time for discovery and to postpone a hearing of ADtec's and ASR's motions for summary judgment until discovery could be completed. Motions by ADtec and ASR for summary judgment were granted on 30 January 1993. The trial court granted defendants Carl and Shirley Wicker's motion for summary judgment on 3 August 1993. Plaintiffs appealed from each of the above mentioned rulings of the trial court and the appeals have been consolidated for disposition.

---

[1] The first issue which we must decide is whether the statute of repose for a products liability action, G.S. § 1-50(6), is tolled by the operation of G.S. § 1-17, the statutory provision which allows a minor to bring suit within three years of the date upon which the minor reaches majority. The question appears to be an issue of first impression for our courts. We hold that the clear and explicit intent of the legislature, as evidenced by the statutory language of the Products Liability Act itself, is to allow the statute of repose to be tolled if G.S. § 1-17 applies.

The statute of repose for a products liability action as found in G.S. § 1-50(6) provides:

(6) No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption.

Statutes of repose operate differently than statutes of limitations. "The term 'statute of repose' is used to distinguish ordinary statutes of limitation from those that begin to run at a time unrelated to the traditional accrual of the cause of action." *Boudreau v. Baughman*, 322 N.C. 331, 339-40, 368 S.E.2d 849, 856 (1988). A statute of repose "serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue,"

*Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E.2d 469, 475 (1985), and functions to give a defendant a vested right not to be sued if the plaintiff fails to file within the prescribed period. *Colony Hill Condominium I Assoc. v. Colony Co.*, 70 N.C. App. 390, 320 S.E.2d 273 (1984), *disc. review denied*, 312 N.C. 796, 325 S.E.2d 485 (1985). G.S. § 1-50(6) is intended to be a substantive definition of rights which sets a fixed limit after the time of the product's manufacture beyond which the seller will not be held liable. *See Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415 (1982). Whether a statute of repose has expired is strictly a legal issue. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983).

Plaintiffs do not deny that the operative effect of the statute of repose in this case is to foreclose suit against defendants six years after the sale of the product. However, plaintiffs contend that G.S. § 1-17 effects a grace period in which the statute of repose can be tolled. G.S. § 1-17, entitled Disabilities, provides, in pertinent part:

(a) A person entitled to commence an action who is **at the time the cause of action accrued** either

(1) Within the age of 18 years; . . .

(3) . . . may bring his action within the time herein limited, after the disability is removed, . . . within three years next after the removal of the disability, and at no time thereafter.

(Emphasis added.) G.S. § 1-17 provides for the tolling of most limitations periods during a person's minority. Where a guardian ad litem is appointed for a minor, the limitation period begins to run from the time of the appointment. *Jefferys v. Tolin*, 90 N.C. App. 233, 368 S.E.2d 201 (1988).

While these two statutory provisions are seemingly in conflict, the 1979 Sess. Laws ch. 654, entitled "An Act Relating to Civil Actions for Damages for Personal Injury, Death or Damage to Property Resulting From the Use of Products," (the Act) provides a clear answer. The Act enacted as law both Chapter 99B, governing products liability suits, and G.S. § 1-50(6), the statute of repose applicable to Chapter 99B. Section 6, which is application language governing the effect and scope of the Act, states that **"[t]he provisions of this act shall not be construed to amend or repeal the provisions of G.S. 1-17."** 1979 Sess. Laws ch. 654 Sec. 6. (Emphasis added.)

BRYANT v. ADAMS

[116 N.C. App. 448 (1994)]

In construing a statute, we must first ascertain the legislative intent to ensure that the purpose and intent of the legislation are satisfied. In making this determination, we look first to the language of the statute itself. If the language used is clear and unambiguous, this Court must not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language. *Fowler v. Valencourt*, 334 N.C. 345, 435 S.E.2d 530 (1993). "A fundamental rule of statutory construction is that when the legislature has erected within the statute itself a guide to its interpretation, that guide must be considered by the courts in the construction of other provisions of the act which, in themselves, are not clear and explicit." *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980). On its face, the Act instructs us, in Section 6, that G.S. § 1-17 may operate to toll the statute of repose provision.

Defendants argue that it would be impossible to conclude that the language concerning G.S. § 1-17 was intended to control over the provisions of G.S. § 1-50(6) because if the legislature had so intended, such intent could have been stated expressly as "the provisions of G.S. § 1-50(6) shall be governed by the tolling provisions of G.S. § 1-17." We reject this argument. The application language of the Act states clearly that Chapter 99B "shall not be construed to amend or repeal" G.S. § 1-17. Defendants' interpretation that tolling of the statute of repose under G.S. § 1-17 cannot occur would result in amending G.S. § 1-17 to provide that a person entitled to commence an action who is, at the time the cause of action accrued, under one of the listed disabilities may bring an action within three years after the removal of the disability **unless the statute of repose operates to bar that action**. In our view, such an interpretation would directly contravene the intent of our legislature.

Defendants further argue that the more specific statute of repose in a products liability action controls over the more general tolling provision for persons under disability. Defendants cite to rules of statutory construction which state "that where one statute deals with certain subject matter in particular terms and another deals with the same subject matter in more general terms, the particular statute will be viewed as controlling in the particular circumstances absent clear legislative intent to the contrary." *State Ex Rel. Utilities Comm. v. Thornburg*, 84 N.C. App. 482, 353 S.E.2d 413, *disc. review denied*, 320 N.C. 517, 358 S.E.2d 533 (1987). (Citation omitted.) We reject defendants' argument because we find legislative intent to the contrary as

expressed in section 6 which explicitly provides that the tolling provision for disabilities will apply under the Products Liability Act.

Defendants also argue that tolling the products liability statute of repose for disabilities negates the entire purpose of the statute of repose. If the legislative intent is to place a greater value upon the right of a person under certain disabilities to have an extended time in which to bring suit than upon the right of a manufacturer to be free from suit after six years, the courts must defer to that intent. As the Supreme Court recognized in *Tetteron v. Long Manufacturing Co.*, 314 N.C. 44, 332 S.E.2d 67 (1985), if the legislature chooses to make economic policy determination into law then that intention should be respected by the courts.

Moreover, G.S. § 1-17 does not completely eviscerate the statute of repose in the case of minors and others under disability. If a product is over six years old at the time of injury, which would be the time that the claim accrues, then the statute of repose operates as a total bar on that claim. However, if a claim accrues before the six year statute of repose has expired, G.S. § 1-17 simply operates to extend the time period within which a minor or other with disability may bring suit under Chapter 99B. Therefore, claims **accruing** after six years will still be barred.

Finally, defendants argue that the statute of repose cannot be tolled under G.S. § 1-17 because once a limitations period has begun to run, then no subsequent disability may toll the running of the limitations period. Defendants rely on the case of *Davis v. E.I. DuPont DeNemours & Co., Inc.*, 400 F.Supp 1347 (W.D.N.C. 1974), for the proposition that "once a period of limitations begins to run nothing stops it, and that . . . the subsequent accession of a minor to a right of action cannot toll its running." *Davis* was not decided under G.S. § 1-50(6), but rather under an earlier statute, G.S. § 1-52(5), which set the limitations period for an action to recover damages caused by a defective product at three years. We reject the analysis employed by the *Davis* court as inapplicable to G.S. § 1-50(6) because the express intent of the legislature is to provide minors and others with disabilities a longer time in which to file suit for injuries caused by a defective product.

## Defendant Andy W. Adams

[2] The court's order dated 17 June 1992 granted defendant Andy W. Adams' (hereinafter "Adams") Rule 12(b)(6) motion to dismiss.

Defendant Adams contends that the trial court properly dismissed plaintiffs' claims because the claims were time barred on their face by G.S. § 1-52(16) and G.S. § 1-50(6). "When the complaint discloses on its face that plaintiff's claim is barred by the statute of limitations, such defect may be taken advantage of by a motion to dismiss under Rule 12(b)(6)." *Fleet Real Estate Funding Corp. v. Blackwelder*, 83 N.C. App. 27, 31, 348 S.E.2d 611, 614 (1986), *disc. review denied*, 319 N.C. 104, 353 S.E.2d 109 (1987), *quoting F.D.I.C. v. Loft Apts.* 39 N.C. App. 473, 250 S.E.2d 693, *disc. review denied*, 297 N.C. 176, 254 S.E.2d 39 (1979).

Plaintiffs argue that Rex Bryant's claim is tolled under G.S. § 1-17. As we have determined, the operation of the products liability statute of repose may be tolled under G.S. § 1-17 for a plaintiff's disability. Therefore, the issue is whether Rex Bryant's claims against Adams can be tolled under G.S. § 1-17.

> In North Carolina the rule is that the statute of limitations begins to run against an infant or an insane person who is represented by a guardian at the time the cause of action accrues. If he has no guardian at that time, then the statute begins to run upon the appointment of a guardian or upon the removal of his disability as provided by G.S. § 1-17, whichever shall occur first.

*Trust Co. v. Willis*, 257 N.C. 59, 62, 125 S.E.2d 359, 361 (1962). (Citations omitted.) Rex Bryant was fourteen years old at the time of his accident. As a minor, Rex was required to file suit within three years after the earlier of his attaining the age of majority or the appointment of a guardian ad litem for him. A guardian ad litem was appointed for Rex on 27 November 1989. Suit was filed against Andy W. Adams on 11 March 1992 which is less than two and a half years after the appointment of Rex's guardian ad litem. Consequently, Rex Bryant may rely on G.S. § 1-17 to toll the statute of repose and statute of limitation against defendant Andy W. Adams.

[3] However, plaintiffs Henry A. Bryant and Hilda Bryant were under no disability at the time their claims accrued, and the operation of the statute of repose as to their claims cannot be tolled by G.S. § 1-17. They argue, however, that Adams should be equitably estopped from relying on the statute of limitation and statute of repose because of representations by defendant Adams and his counsel which had the effect of misleading plaintiffs. A party may be estopped to plead and rely on a statute of limitations defense when delay has been induced by acts, representations, or conduct which would amount to a breach

of good faith. *Nowell v. Tea Co.*, 250 N.C. 575, 108 S.E.2d 889 (1959). Equitable estoppel may also defeat a defendant's statute of repose defense. *One North McDowell Assn. v. McDowell Development*, 98 N.C. App. 125, 389 S.E.2d 834, *disc. review denied*, 327 N.C. 432, 395 S.E.2d 686 (1990).

The trial court dismissed this case under Rule 12(b)(6). The issue is whether the complaint on its face sufficiently states a claim for relief to equitably estop defendant Adams from pleading the statute of limitations and statute of repose. If so, dismissal under Rule 12(b)(6) was improper. Our Court in *Hensell v. Winslow*, 106 N.C. App. 285, 416 S.E.2d 426, *disc. review denied*, 332 N.C. 344, 421 S.E.2d 148 (1992), set forth the essential elements for equitably estopping a party from asserting the statute of limitations:

> The essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

*Id.* at 290-91, 416 S.E.2d at 430. Plaintiffs' complaint provides the essential elements for equitable estoppel. Plaintiffs allege that Adams thwarted discovery efforts regarding specific facts and refused to answer questions or provide documentation; and that Adams, as president, director and sole stockholder of both ASR and ADtec, was the only individual who possessed the information plaintiffs sought. Plaintiffs arguably did not file suit against Adams sooner because of Adams' refusal to answer plaintiffs' request for discovery, and were obviously prejudiced, as evidenced by the claims being subject to dismissal based on the statute of limitation and statute of repose if defendants are not equitably estopped from relying on these defenses. Therefore, since plaintiffs' pleadings sufficiently state a claim for equitable estoppel, we remand to the trial court for a factual determination of whether Adams should be estopped from relying on the statute of limitation and statute of repose.

### Defendants ADtec Sales, Inc. & ASR Manufacturing Co.

The trial court denied plaintiffs' motion to extend the discovery period, overruled plaintiffs' objection to the court's hearing motions

for summary judgment made by defendants ADtec Sales, Inc. and ASR Manufacturing Co., and granted those motions for summary judgment. Plaintiffs appeal those rulings.

[4] First, plaintiffs argue that the trial court erred by failing to extend the discovery period and by hearing defendants' summary judgment motion prior to plaintiffs completing discovery. Plaintiffs sought a continuance of the discovery period pursuant to N.C.R. Civ. P. 56(f) which provides that a court may order a continuance to permit discovery to enable the party opposing summary judgment to justify his opposition. However, a decision to grant a continuance under Rule 56(f) rests in the discretion of the trial court. *Brown v. Greene*, 98 N.C. App. 377, 390 S.E.2d 695 (1990). Defendants point to *Florida National Bank v. Satterfield*, 90 N.C. App. 105, 367 S.E.2d 358 (1988), where the complaint had been filed in excess of fourteen months and summary judgment hearing occurred two months later, as support for its position that the trial court did not abuse its discretion in this case. We note that all of the outstanding discovery was completed in *Florida National Bank* when the court denied the continuance. In this case, although there existed outstanding discovery, it was unrelated to the grounds on which summary judgment was granted. Furthermore, the discovery period provided for by the local rules had expired prior to plaintiffs' request for a continuance. We find no abuse of the trial court's discretion in denying plaintiffs' Rule 56(f) motion.

## ADtec Sales, Inc.

[5] Plaintiffs contend the trial court erred when it granted summary judgment in favor of defendant ADtec Sales, Inc. A party seeking summary judgment has the burden of showing, based on pleadings, depositions, answers, admissions, and affidavits, that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). The evidence must be viewed in the light most favorable to the non-movant. *Clark v. Brown*, 99 N.C. App. 255, 393 S.E.2d 134 *disc. review denied*, 327 N.C. 426, 395 S.E.2d 675 (1990). The movant may meet its summary judgment burden by showing either (1) an essential element of the non-movant's claim is nonexistent, or (2) the non-movant cannot produce evidence to support an essential element of his claim. *City of Thomasville v. Lease-Afex, Inc.*, 300 N.C. 651, 654, 268 S.E.2d 190, 193 (1980).

ADtec contends that summary judgment was properly entered because ADtec did not manufacture the trampoline which injured Rex Bryant. Plaintiffs respond that ADtec was a successor corporation to a portion of Andy's Sale and Rental, Inc., the company that manufactured the trampoline in question. In North Carolina, "[a] corporation which purchases all, or substantially all, of the assets of another corporation is generally not liable for the old corporation's debts or liabilities." *Budd Tire Corp. v. Pierce Tire Co.*, 90 N.C. App. 684, 687, 370 S.E.2d 267, 269 (1988). The purchasing corporation may become liable, however, for the old corporation's debts where the transfer of assets was done for the purpose of defrauding the corporation's creditors or where the purchasing corporation is a "mere continuation" of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers. In determining whether the purchasing corporation is a "mere continuation" of the old corporation, factors such as inadequate consideration for the purchase, or a lack of some of the elements of a good faith purchaser for value may be considered.

Plaintiffs' claims against ADtec were properly dismissed only if the pleadings, affidavits and other materials of record establish as a matter of law that ADtec is not a "mere continuation" of Andy's Sale and Rental, Inc. *See Heather Hills Home Owners v. Carolina Cust. Dev.*, 100 N.C. App. 263, 395 S.E.2d 154, *disc. review denied*, 327 N.C. 634, 399 S.E.2d 327 (1990). Plaintiffs' evidence forecasts that the manufacturer, Andy's Sale and Rental, Inc., sold to Andy Adams sales lists, inventory, and equipment for the price of $627,667.00; that Adams then sold the sales lists, inventory, and equipment to ADtec, a corporation newly formed by Adams to market trampolines; and that ASR, the successor to Andy's Sale and Rental, Inc., has less than $20,000.00 in property on the property tax listing for that corporation. Furthermore, while evidence exists that Adams paid some consideration for the sale to Andy's Sale and Rental, Inc., plaintiffs point out that there is no evidence before the trial court to show ADtec ever paid anything for the customer lists, inventory, and equipment. Drawing all inferences against defendant ADtec as movant and in favor of plaintiffs as non-movant, as we are required to do, we conclude that defendant ADtec has failed to show that no genuine issue of material fact exists because plaintiffs have forecast evidence that ADtec is a "mere continuation" of Andy's Sale and Rental, Inc., in that ADtec received assets from Andy's Sale and Rental, Inc., for questionable considera-

tion and has the same sole shareholder, as well as common directors and officers. Accordingly, we remand this issue for trial.

### ASR Manufacturing Co.

**[6]** Plaintiffs contend that the trial court erred by granting ASR Manufacturing Co.'s motion for summary judgment. Defendant ASR moved for summary judgment on the basis that plaintiffs' claims against ASR are time barred by the six year statute of repose. The trampoline was sold to Herbert and Annie Bryant on 2 July 1984. At a hearing for summary judgment, ASR argued that since it was not sued until 16 July 1990, plaintiffs' claims are barred.

As determined above, Rex Bryant, as a minor can toll the statute of repose until three years after he reached majority or a guardian ad litem was appointed for him. A guardian was appointed for Rex Bryant on 27 November 1989. Less than one year later, suit was filed against ASR. Plaintiffs submitted to a voluntary dismissal on 11 March 1991 and refiled one year later on 11 March 1992, as permitted by N.C.R. Civ. P. 41(a)(1). Thus, we conclude that Rex Bryant's claims against ASR are not time barred because of the tolling of the statute of limitation and statute of repose pursuant to G.S. § 1-17, and summary judgment for ASR was improper as to the claims of Rex Bryant.

However, Rex's parents were under no disability which would toll the statute of repose. Consequently, their claims are not time barred only if their claims relate back to the original filing against ADtec under N.C.R. Civ. P. 15(c). There is no question that all claims against ADtec were filed within the applicable time limits. Rex and his parents' claims accrued on 27 November 1986, the date Rex was injured. The statute of limitations in this case is three years. N.C. Gen. Stat. § 1-52(16). Thus, the claim against ADtec, which was filed on 27 November 1989, was filed before the expiration of the statute of limitations. The statute of repose expired six years after the date of the sale of the product, on 2 July 1990. Therefore, if Rex's parents' claims against ASR can relate back to the original filing against ADtec, summary judgment for ASR on Rex's parents' claims was not proper. Rule 15(c) of the North Carolina Rules of Civil Procedure, which governs a party's ability to add a new defendant after the statute of limitations or repose has expired, provides:

> A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the

transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

Under the rule, the trial court may allow the addition of a party defendant regardless of the expiration of the applicable limitations period if that defendant had notice of the claim so as not to be prejudiced by the untimely amendment. *Ring Drug Co. v. Medicorp Enterprises*, 96 N.C. App. 277, 283, 385 S.E.2d 801, 806 (1989). The court in *Ring Drug* set forth the following test for determining when a new party defendant may be added after the limitations period has run:

> 1) the basic claim arises out of the conduct set forth in the original pleading, 2) the party to be brought in receives such notice that it will not be prejudiced in maintaining its defense, 3) the party knows or should have known that, but for a mistake concerning identity, the action would have been brought against it, and 4) the second and third requirements are fulfilled within the prescribed limitations period.

*Id.* (Citations omitted.) In this case, Rex's parents cannot meet the fourth element of the *Ring Drug* test which requires that the party to be added must have notice of the institution of the civil action before the statute of limitation expires.

Plaintiffs filed suit against ADtec on the last day of the three year statute of limitations period, 27 November 1989. However, ADtec was not served until 23 December 1989 which is beyond the three year period. Thus, we conclude that plaintiffs have not satisfied Rule 15(c) since ADtec was not served with the summons and complaint prior to the expiration of the statute of limitations; ASR could not have had notice through ADtec before the statute of limitations expired. Therefore, the amendment of the complaint to add ASR as a party does not relate back to the original complaint since notice was received after the expiration of the statute of limitations.

### Defendants Carl and Shirley Wicker

[7] The trial court granted summary judgment in favor of defendants Wicker as to all of plaintiffs' claims. Plaintiffs contend genuine issues of fact exist, precluding summary judgment with respect to plaintiffs' claims for negligence and based on failure to warn and breach of express and implied warranties.

Summary judgment is proper only if the moving party can establish as a matter of law that plaintiffs cannot make out the *prima facie*

elements for the claims which they assert or that defendants can establish a defense as a matter of law. *See discussion supra.* Summary judgment is rarely appropriate for negligence issues. *City of Thomasville v. Lease-Afex, Inc., supra.* As with other negligence actions, the essential elements of a products liability action based upon negligence are (1) duty, (2) breach, (3) causation, and (4) damages. *Morgan v. Cavalier Acquisition Corp.*, 111 N.C. App. 520, 432 S.E.2d 915, *disc. review denied*, 335 N.C. 238, 439 S.E.2d 149 (1993). In the case of a seller of goods which cause injury, the seller's duty to warn arises as follows:

> [T]he non-manufacturing seller has the duty to warn of hazards attendant to the assembled and installed product's use but only when the seller "has actual or constructive knowledge of a particular threatening characteristic of the product" and simultaneously "has reason to know that the purchaser will not realize the product's menacing propensities for himself." *Ziglar v. E. I. DuPont De Nemours & Co.*, 53 N.C. App. 147, 151, 280 S.E.2d 510, 513, *disc. rev. denied*, 304 N.C. 393, 285 S.E.2d 838 (1981).

*Crews v. W. A. Brown & Son*, 106 N.C. App. 324, 330, 416 S.E.2d 924, 928 (1992). *See generally* Annot., "Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury," 76 A.L.R.2d 9 (1961).

Although the legislature did not undertake to define what "products" are covered by Chapter 99B, G.S. § 99B-1(3) anticipates that a products liability action may include an action for personal injuries caused by or resulting from the "warning or instructing" of any product. *Driver v. Burlington Aviation, Inc.*, 110 N.C. App. 519, 430 S.E.2d 476 (1993). Furthermore, in *Buck v. Railroad*, 44 N.C. App. 588, 261 S.E.2d 517 (1980), *disc. review denied*, 299 N.C. 735, 267 S.E.2d 659 (1980), this Court held that a seller may be held liable for injury to a person when the seller fails to provide adequate information about the dangerous propensities of a trampolining device.

Plaintiffs allege that the Wickers were under a duty to warn about the dangerous propensities of the trampoline of which they were aware and which the Wickers knew that Herbert Bryant did not have reason to know. In answer to plaintiffs' interrogatories, the Wickers acknowledged that they were aware of the following dangers associated with a trampoline when they sold the trampoline at issue in this case: falling from the edge of the trampoline to the ground, using without adult supervision, using the trampoline with more than one

person at a time, using with defective parts, improper assembly, jumping or bouncing from the trampoline to the ground, landing improperly on the bed of the trampoline, and landing on the springs or frame of the trampoline. The Wickers contend that the above dangers of which they were aware are open and obvious dangers to users exercising reasonable care resulting in no duty on the part of the Wickers to warn.

In opposition to the Wickers' motion for summary judgment, plaintiffs submitted the affidavit of Thomas L. Thrailkill, a career YMCA administrator, physical education director, and trampoline instructor who also served as an expert witness in *Buck v. Railroad*, *supra*. Mr. Thrailkill's affidavit states that "[t]rampolines are deceptive to the extent that they appear to be a rather harmless toy, when in fact, any object which can cause a person to be up in the air or to move through or approach an inverted position are [sic] dangerous. From my experience, I have found that these dangers are not apparent to children or adults in the absence of instruction by a qualified instructor." Whether or not these dangers were open and obvious is disputed and should have been an issue for the jury.

The Wickers contend that Carl Wicker gave oral warnings to Herbert Bryant when he purchased the trampoline, advising him to assemble the trampoline properly, that only one person should jump at a time and that persons should not jump from the trampoline to the ground. However, Carl Wicker testified by deposition that he remembers giving his safety lecture to someone from Booneville who would set up the trampoline himself, and their records disclose two individual buyers from Booneville who set up their own trampolines, one of whom was Herbert Bryant. However, Mr. Wicker had no independent recollection that he gave the instructions to Herbert Bryant. Herbert Bryant disputed, by his affidavits, that the warnings were given. Thus, there is an issue of fact as to whether Herbert Bryant received the warnings which Mr. Wicker claims to have given. Consequently, we find that factual issues exist as to whether the Wickers had a duty to warn of the trampoline's dangers and whether such duty was breached.

The Wickers contend that even if they were under a duty to warn and breached that duty, plaintiffs cannot recover because the failure to warn was not the proximate cause of Rex Bryant's injuries. In his deposition, Rex Bryant stated that if he had been aware of the dangers associated with using a trampoline and that the manufacturer

recommended using the trampoline with adult supervision, jumping only one person at a time, and never dismounting by jumping off the trampoline, then he would have followed those instructions. He sustained his injuries while attempting to jump off the trampoline. Although a warning label was attached to the mat, according to plaintiffs' evidence it had faded from exposure to the weather. As we have noted, a question exists as to whether the sellers delivered any warnings at all. Thus, a question of fact exists as to whether Rex's injuries were proximately caused by the seller's failure to warn. Summary judgment dismissing plaintiffs' negligence claims against the Wickers was error.

[8] Next, plaintiffs claim that the Wickers were not entitled to summary judgment on plaintiffs' breach of warranty claims. An express warranty arises if a statement of the manufacturer or seller induces the purchase of the product. According to G.S. § 25-2-313(1)(a), an express warranty is created when a seller makes "[a]ny affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain . . . ." *Riley v. Ken Wilson Ford, Inc.*, 109 N.C. App. 163, 426 S.E.2d 717 (1993). The only express warranties which plaintiffs claim were made were that the trampoline was "safe" because it had a "Natural Tendency to Work [the] Jumper Toward the Center" and that it had a "uniform bounce." These warranties which were printed on sales literature applied only to the round trampolines made by the manufacturer. The oval trampoline, upon which plaintiff was injured, contained no such warranties. Plaintiffs cannot show a breach of express warranty by the Wickers and summary judgment was proper as to that claim.

[9] Plaintiffs also assert that the Wickers breached implied warranties. Because plaintiffs do not allege that the trampoline was purchased for anything other than general use, there is no implied warranty of fitness for a particular purpose. Plaintiffs' claim, if any, must be for breach of implied warranty of merchantability. In order to recover for breach of implied warranty of merchantability, plaintiff must establish:

> (1) a merchant sold goods, (2) the goods were not "merchantable" at the time of sale, (3) the plaintiff (or his property) was injured by such goods, (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury, and (5) the plaintiff so injured gave timely notice to the seller.

*Wright v. Auto Sales, Inc.*, 72 N.C. App. 449, 454, 325 S.E.2d 493, 496 (1985). Plaintiffs allege that the warranty of merchantability was breached by the Wickers because the trampoline was sold with no instructions for proper use, no warnings of potential hazards, virtually no safety instructions and it was not fit for foreseeable users. Plaintiffs do not suggest that the trampoline itself was defective; rather plaintiffs contend that the propensity for danger associated with use of a trampoline was not disclosed and complete instructions for safe use were not provided.

Defendants argue that because the trampoline itself was not defective, plaintiffs cannot recover for breach of implied warranty of merchantability. *See Cockerham v. Ward*, 44 N.C. App. 615, 262 S.E.2d 651, *disc. review denied*, 300 N.C. 195, 296 S.E.2d 622 (1980). However, we have held that a failure to warn of dangerous propensities concerning a product may create an action of breach of implied warranty of merchantability. In *Reid v. Eckerds Drugs*, 40 N.C. App. 476, 253 S.E.2d 344, *disc. review denied*, 297 N.C. 612, 257 S.E.2d 219 (1979), we found that a failure to adequately warn of dangerous propensities may, in a proper case, render a product unmerchantable under G.S. § 25-2-314(2)(c), (e) and (f) and provide grounds for an action to recover damages for a breach of implied warranty of merchantability embodied in G.S. § 25-2-314(1). *See* Blanchard, Charles F. and Doug B. Abrams, *"North Carolina's New Product Liability Act: A Critical Analysis,"* 16 Wake Forest Law Review 171, 180-81 (1980).

Since North Carolina case law allows an action for breach of implied warranty of merchantability for failure to warn, we must examine the warnings in this case to see if they were sufficient. The warnings attached to the trampoline warned of the danger of jumping more than one at a time and of jumping off the trampoline. Plaintiffs pursue two arguments. First, plaintiffs argue that warnings were not sufficient because they had faded from exposure to the weather by the time plaintiff Rex Bryant jumped on the trampoline. The problem with this argument is that the warnings were there at the time of sale and for recovery under implied warranty of merchantability the product must be unmerchantable at the time of sale. *See Cockerham v. Ward, supra.*

Plaintiffs' second argument asserts that the warnings given were inadequate because the warnings did not include warnings that the trampoline should only be used under trained adult supervision, that four spotters should be present at the center of each side of the tram-

poline, that the trampoline should be stored under lock and key, and that bouncing near the edge is dangerous. Although, the failure to include these warnings might have rendered the trampoline unmerchantable, plaintiffs must prove, to recover for breach of implied warranty of merchantability, that the failure to include these warnings proximately caused Rex Bryant's injuries.

In our opinion, Rex Bryant's deposition testimony to the effect that he would have heeded any warnings and safety recommendations had they been adequately provided raises a question of fact as to whether Rex's injuries were proximately caused by the seller's failure to warn. The issue of proximate cause is usually a question for the jury, *see Lamm v. Bissette Realty*, 327 N.C. 412, 395 S.E.2d 112 (1990), and the question of inadequate warning as proximate cause has been specifically found by this Court to be legally sufficient to reach the jury. *Buck v. Railroad, supra.*

The Wickers argue, however, that they are entitled to summary judgment on plaintiffs' claims for breach of implied warranty of merchantability because (1) plaintiffs failed to establish that the trampoline was unmerchantable at the time of sale; (2) Rex's misuse rather than lack of proper warnings was the proximate cause of his injuries; (3) Rex was not in privity with the seller such that Rex cannot be viewed as a person to whom any implied warranties extended; and (4) plaintiffs failed to give adequate notice, a condition precedent to recovery.

We have already determined that failure to warn of dangerous propensities of a product may render a product unmerchantable and that whether the failure to warn proximately caused Rex's injuries is a question of fact for the jury. Thus, we must consider the privity and notice issues.

[10] Our legislature has relaxed the privity requirement to recover under a theory of implied warranty of merchantability.

> Where . . . the products liability action is brought against the seller for breach of either express or implied warranty, the privity barrier has been removed legislatively to the same extent as it has been removed in actions against manufacturers for breach of express warranty. N.C.G.S. 25-2-318. Accordingly, assuming the existence of express and implied warranties, N.C.G.S. 25-2-318 extends those warranties beyond the buyer but only to natural persons suffering personal injury who are in the buyer's family or

household or who are guests in the buyer's home and only if it is reasonable to expect such persons may use, consume, or be affected by the goods.

*Crews v. W. A. Brown & Son*, 106 N.C. App. at 332, 416 S.E.2d at 930. (Citations omitted.) It is undisputed that Rex Bryant was not part of his uncle's household. However, the statute extends privity to members of the buyer's "family" and to "guests" in the buyer's household. The terms "family" or "guest" are not otherwise defined, thus these words must be given their natural and ordinary meanings. *Hyler v. GTE Products Co.*, 333 N.C. 258, 425 S.E.2d 698 (1993).

Herbert Bryant was not aware that Rex was using the trampoline at the time of his injuries. However, the evidence suggests that Herbert Bryant allowed other children who were friends of his daughter to jump on the trampoline, that Rex accompanied some of these friends to Herbert Bryant's house to jump on the trampoline, and permits an inference that Herbert Bryant would have permitted Rex Bryant to jump on his trampoline on the day that he was injured. Thus, we find that an issue of fact exists as to whether Rex Bryant was a guest of Herbert Bryant such that he would be in privity to sue the Wickers for breach of implied warranty of merchantability.

[11] Finally, the Wickers assert that plaintiffs failed to give notice as required under Article 2 to recover for breach of warranty. G.S. § 25-2-607(3)(a) provides that the buyer must notify the seller within a reasonable time of the breach. What constitutes a reasonable time depends upon the facts of each case and the policies underlying the notice requirement. *Maybank v. Kresge Co.*, 302 N.C. 129, 273 S.E.2d 681 (1981). According to our Supreme Court:

[w]hen the plaintiff is a lay consumer and notification is given to the defendant by the filing of an action within the period of the statute of limitations, and when the applicable policies behind the notice requirement have been fulfilled, . . . the plaintiff is entitled to go to the jury on the issue of seasonable notice.

*Id.* at 136, 273 S.E.2d at 685. Additionally,

Whether a prima facie showing that the notice was given "within a reasonable time" has been made can be determined only by examining the particular facts and circumstances of each case and the policies behind the notice requirement. If plaintiff's evidence shows that the policies behind the requirement have not

been frustrated and, instead, have been fulfilled, the evidence is sufficient to withstand a directed verdict motion.

*Id.* at 134, 273 S.E.2d at 684. The policies behind the notice provision are (1) to enable the seller to make efforts to cure the breach by making adjustments or replacements in order to minimize the buyer's damages and the seller's liability; (2) to afford the seller a reasonable opportunity to learn the facts so that he may adequately prepare for negotiation and defend himself in a suit; and (3) to provide a seller with a terminal point in time for liability. *Id.* Equally important as the above policies is the proposition that " '[a] reasonable time' for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *Id.* at 135, 273 S.E.2d at 684-85. The issue becomes a question of law only when the facts are undisputed and only one inference can be drawn as to the reasonableness of the notice. *Id.* at 136, 273 S.E.2d at 684, n.1.

Examining the evidence in the light most favorable to plaintiffs, there is a question of fact as to whether notice was seasonable. Plaintiffs contend that the Wickers received notice from the insurance agent representing Herbert Bryant's homeowner's insurance carrier, the same company as the Wicker's insurance carrier. Furthermore, the policy reasons support a finding that notice was seasonable. It is not alleged that the trampoline was defective; rather, at issue are the warnings attendant to its use. The photographs of the trampoline taken by Herbert Bryant's insurance company, the same company which represents the Wickers, provide the Wickers with the information necessary for their defense. It is not alleged that a visual inspection would help the defense in this case. Thus, we find that the question of whether notice was seasonable in this case is properly a jury issue.

[12] Next, the Wickers contend that Rex Bryant was contributorily negligent as a matter of law entitling the Wickers to summary judgment on both plaintiffs' negligence and warranty claims. The issue of contributory negligence is ordinarily a question for the jury rather than an issue to be decided as a matter of law. *Champs Convenience Stores v. United Chemical Co.*, 329 N.C. 446, 406 S.E.2d 856 (1991).

G.S. § 99B-4 of the Products Liability Act, which codifies contributory negligence as a bar in products liability actions, provides in part:

BRYANT v. ADAMS

[116 N.C. App. 448 (1994)]

No manufacturer or seller shall be held liable in any product liability action if:

(1) The use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings; . . .

. . .

(3) The claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused the injury or damage to the claimant.

N.C. Gen. Stat. § 99B-4 (1989). G.S. § 99B-4 "appears to codify a particular form of contributory negligence and makes little change in prior law. The determination of knowledge is a question for the trier of fact." (Citations omitted.) Blanchard, *"North Carolina's New Product Liability Act"*, *supra* at 175. However, if the instructions themselves were not adequate or if the plaintiff did not read the instructions but the jury determined that the plaintiff still exercised reasonable care, a plaintiff should not be found contributorily negligent. *Champs Convenience Stores v. United Chemical Co.*, *supra*.

Upon the evidence in this case, the issue of contributory negligence is properly for the jury. "Issues of contributory negligence, like those of ordinary negligence, are rarely appropriate for summary judgment. Only where plaintiff's own evidence discloses contributory negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted." (Citations omitted.) *Branks v. Kern*, 83 N.C. App. 32, 36, 348 S.E.2d 815, 818 (1986), *rev'd on other grounds*, 320 N.C. 621, 359 S.E.2d 780 (1987).

[13] Finally, plaintiffs assert that the trial court erred when it granted the Wickers summary judgment on plaintiffs' strict liability claims. This Court has previously addressed the issue of whether the General Assembly, in enacting Chapter 99B, adopted the doctrine of strict liability in products liability actions in this State, and we concluded that Chapter 99B was not a strict liability statute. *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E.2d 504 (1980). *See Driver v. Burlington Aviation, Inc.*, *supra*. Nor have the courts of this State adopted a general rule of strict liability for manufacturers of products

introduced into the stream of commerce. *Fowler v. General Electric Co.*, 40 N.C. App. 301, 252 S.E.2d 862 (1979). Therefore, since it is clear that North Carolina expressly rejects strict liability in products liability actions, summary judgment was properly granted on plaintiffs' strict liability claims.

In summary, we reverse the trial court's orders dismissing plaintiffs' claims against defendants Adams and ADtec, and the minor plaintiff's claims against ASR. We affirm summary judgment in favor of defendant ASR as to the claims of Henry Bryant and Hilda Bryant. We also affirm summary judgment in favor of defendants Wicker as to plaintiffs' claims for breach of express warranty and for strict liability. Summary judgment in favor of the Wickers as to plaintiffs' claims for negligence and breach of implied warranty is reversed. This case is remanded to the Superior Court of Surry County for trial upon all claims not dismissed.

Affirmed in part; reversed and remanded in part.

Judges JOHNSON and McCRODDEN concur.