RING DRUG COMPANY, INC., D/B/A BOBBITT'S PHARMACIES AND MEDI-
CAL SERVICE COMPANY v. CAROLINA MEDICORP ENTERPRISES, INC.,
FORSYTH MEMORIAL HOSPITAL, INC., BLUMENTHAL JEWISH HOME
FOR THE AGED, INC., ALCO STANDARD CORPORATION, D/B/A JUSTICE
DRUG COMPANY, CAROLINA MEDICORP, INC., AND SALEM HEALTH
SERVICES, INC.

No. 8921SC175

(Filed 21 November 1989)

1. **Limitation of Actions § 4 (NCI3d); Unfair Competition § 1 (NCI3d) — pharmaceutical supplies — unfair trade practices — termination of contract — statute of limitations**

     A claim for unfair trade practices arising from the ter-
mination of a contract for pharmaceutical supplies between
plaintiff and defendant Blumenthal Jewish Home for the Aged,
Inc., was most closely analogous to an action for breach of
contract and accrued on the day the contract terminated, 1
September 1984. Even under a notice theory, the earliest that
the record would allow notice to be ascribed to plaintiff would
be 17 July 1984, and plaintiff's initial complaint would still
have been timely under the four-year statute of limitation
of N.C.G.S. § 75-16.2 because plaintiff obtained an order ex-
tending time to file its complaint on 14 July 1988.

     **Am Jur 2d, Monopolies, Restraints of Trade and Unfair
Trade Practices §§ 633, 713.**

2. **Limitation of Actions § 12.3 (NCI3d) — amendment of complaint — addition of parties — relation back**

     In an action for unfair trade practices arising from the
termination of a contract to supply pharmaceutical supplies
in which the complaint was amended to add Carolina Medicorp,
Inc. and Salem Health Services, the trial court correctly ruled
that relation back occurred as to Medicorp but did not occur
as to Salem Health. Medicorp had such actual or constructive
notice of litigation that it would not be prejudiced in its defense
but the record did not demonstrate that plaintiff's failure to
name Salem Health resulted from a mistake concerning identi-
ty; rather it shows an unjustified failure to name Salem Health
in a timely fashion. The court adopted the federal test in
*Schiavone v. Fortune*, 477 U.S. 21, for determining when a

party defendant may be added after the limitations period has run. N.C.G.S. § 1A-1, Rule 15(c).

**Am Jur 2d, Limitation of Actions §§ 272, 273.**

3. **Unfair Competition § 1 (NCI3d) — termination of contract for pharmaceutical supplies — preferential pricing — summary judgment proper**

The trial court did not err by entering summary judgment as to Medicorp, Carolina Enterprises, and Forsyth in an action for unfair trade practices arising from the termination of a contract for pharmaceutical supplies between plaintiff and defendant Blumenthal Jewish Home for the Aged, Inc., where the forecast of defendants' evidence showed that it was Salem Health, and not any of these defendants, which serviced the pharmacy and which purchased the pharmaceuticals it sold to Blumenthal and there was nothing in the record beyond plaintiff's allegations to show that Salem Health received preferential pricing because of the involvement of defendants.

**Am Jur 2d, Monopolies, Restraints of Trade and Unfair Trade Practices § 409.**

APPEAL by plaintiff from judgment entered 17 November 1988 in FORSYTH County Superior Court by *Judge Thomas M. Ross.* Heard in the Court of Appeals 9 October 1989.

*Moore and Brown, by B. Ervin Brown, II, and Bowden & Rabil, by S. Mark Rabil, for plaintiff-appellant.*

*Womble, Carlyle, Sandridge & Rice, by Roddey M. Ligon, Jr., and Jeanne Schulte Scott, for defendant-appellees.*

BECTON, Judge.

In this action for unfair trade practices, plaintiff alleges that defendants caused the termination of a contract for pharmaceutical supplies between plaintiff and defendant Blumenthal Jewish Home for the Aged, Inc. The trial judge allowed the motion by defendant Salem Health Services, Inc., to dismiss the complaint, or, in the alternative, for summary judgment, on the ground that the statute of limitations had expired prior to Salem Health's becoming a party to the action. The judge also allowed summary judgment in favor of defendants Carolina Medicorp, Inc., Carolina Medicorp Enterprises,

Inc., and Forsyth Memorial Hospital on the ground that "those corporations were not participants in the contractual arrangements between Blumenthal . . . and Salem Health Services . . . ." Final judgment was certified, and plaintiff appealed. We affirm.

I

Plaintiff, Ring Drug Company, Inc., d/b/a Bobbitt's Pharmacies and Medical Service Company ("Bobbitt"), is a retail pharmacy which offers services to nursing homes. Defendant Carolina Medicorp, Inc. ("Medicorp"), is the sole owner and parent corporation of Carolina Medicorp Enterprises, Inc. ("Carolina Enterprises"), Forsyth Memorial Hospital ("Forsyth"), and Salem Health Services ("Salem Health"). Paul Wiles is the chief executive officer for both Medicorp and Forsyth, and he is the registered agent for all four defendants. Additionally, Carolina Enterprises and Salem Health share the same president and chief executive officer.

From 1968 until 1 September 1984, Bobbitt was the exclusive provider of prescription medicines to defendant Blumenthal Jewish Home for the Aged, Inc. ("Blumenthal"). Bobbitt and Blumenthal had a contractual relationship terminable by either party upon 30-days' notice. In March 1984, Bobbitt informed Blumenthal that the former would be unable to provide service to an on-site pharmacy that Blumenthal wished to establish. On 17 July 1984, Blumenthal's director notified Bobbitt by mail that the contract between the two parties would terminate on 1 September.

Bobbitt alleges that Medicorp and its subsidiaries used preferential pricing that Forsyth, as a hospital, received from drug manufacturers to unfairly compete with Bobbitt for the Blumenthal contract, in violation of N.C. Gen. Stat. ch. 75, forbidding unfair trade practices. On 2 August 1988, following an extension of time in which to file its complaint, Bobbitt instituted this action against, among other defendants, Carolina Enterprises and Forsyth. Bobbitt did not initially name Medicorp nor Salem Health as parties to the action. The complaint was served on Paul Wiles, the registered agent, on 8 August 1988.

On 23 September 1988, Bobbitt amended its complaint, seeking to add Medicorp and Salem Health as defendants. The amended complaint was served on Mr. Wiles on 26 September. Subsequently, Medicorp and Salem Health moved to dismiss the complaint, or, alternatively, for summary judgment, on the ground that the com-

plaint had not been timely filed. The judge allowed the motion as to Salem Health but denied it as to Medicorp. The judge granted summary judgment for Medicorp, Carolina Enterprises, and Forsyth, on the ground that those defendants did not engage in the sale of prescriptions to Blumenthal. Allegedly, Salem Health had engaged in all the dealings with Blumenthal.

## II

Bobbitt first assigns error to the trial judge's allowing Salem Health's motion to dismiss. Bobbitt contends that the amended complaint relates back to the time the original complaint was filed and that dismissal of Salem Health as a party was thus improper. Salem Health argues that the original complaint was not filed within the applicable limitations period and that, alternatively, a complaint may not be amended to add additional parties.

### A.  Statute of Limitations

[1]  A claim for unfair trade practice must be commenced within four years after the cause of action accrues. N.C. Gen. Stat. Sec. 75-16.2 (1988). Initially, we must determine when Bobbitt's cause of action can be said to have "accrued." Bobbitt argues that the statute began to run on 1 September 1984, the date Blumenthal's termination of the contract took effect. Defendants contend that the alleged conspiratorial activities, if any, were substantially completed by March 1984 and that, in any event, Bobbitt was on notice that its relationship with Blumenthal was threatened when Bobbitt received the 17 July 1984 letter from Blumenthal.

In *Patterson v. DAC Corp.*, 66 N.C. App. 110, 310 S.E.2d 783 (1984), this Court said that the statute of limitations for a claim of unfair trade practice based on misrepresentation began to run at the time the alleged fraudulent statements induced plaintiff to execute a note and deed of trust. *Patterson* was cited by a federal district court for the proposition that "[a] cause of action 'accrues' [under chapter 75] when the alleged violation occurs." *United States v. Ward*, 618 F.Supp. 884, 902-03 (E.D.N.C. 1985).

Bobbitt in essence contends that the violation occurred on the day that Blumenthal ceased its performance of the contract. Defendants argue that Bobbitt has incorrectly applied a breach-of-contract theory to a case in which no breach has occurred. *See Craig v. Price*, 210 N.C. 739, 740, 188 S.E. 321, 322 (1936) (accrual in breach-of-contract action occurs at time of breach). Defendants

argue that, to the extent that Bobbitt's complaint is based on fraud, the action begins to accrue when the fraud is, or should have been, discovered. *See Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 214, 171 S.E.2d 873, 884 (1970).

In our view, Bobbitt's complaint is most closely analogous to an action for breach of contract, and we hold that the cause of action began to accrue on 1 September 1984, the day Bobbitt's contract with Blumenthal terminated. We note in passing that our review of the record does not support defendants' assertion that Bobbitt had either actual or constructive notice in March 1984 of the alleged activity by defendants. Under a notice analysis, therefore, the earliest that the record would allow us to ascribe notice to Bobbitt would be 17 July 1984, the day it received notice of termination from Blumenthal. Because, on 14 July 1988, Bobbitt obtained an order extending time to file its complaint, Bobbitt's initial complaint would still have been timely under a notice theory.

## B. The Amended Complaint

[2] Having held that Bobbitt's cause of action accrued on 1 September 1984, we now examine whether its complaint could be amended subsequently so as to add Medicorp and Salem Health as defendants. Unless "relation back" occurs, the statute of limitations is a defense for Medicorp and Salem Health.

N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 15(c) (1983) states that "[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." On three occasions, this court has decided whether Rule 15(c) would permit a complaint to be amended to add a new party defendant after the limitations period had expired. In all three cases, this court decided the issue against the plaintiffs. *See Teague v. Asheboro Motor Co.*, 14 N.C. App. 736, 189 S.E.2d 671 (1972); *Callicutt v. American Honda Motor Co., Inc.*, 37 N.C. App. 210, 245 S.E.2d 558 (1978); *Stevens v. Nimocks*, 82 N.C. App. 350, 346 S.E.2d 180, *cert. denied*, 318 N.C. 511, 349 S.E.2d 873 (1986).

In *Teague*, an automobile dealership that plaintiff desired to sue had changed its name, and another company, operating from the same location, had adopted the original name. Plaintiff filed

her complaint against the new company. After the limitations period had run, plaintiff attempted to amend her complaint to bring in the original corporation. We said that, under Rule 15(c), "the claim asserted in the amendment must be against one given notice in the original pleading . . . ." 14 N.C. App. at 739, 189 S.E.2d at 673. Because the new party "was clearly not in court when the amended complaint was filed" and had no knowledge of the litigation, we held that the amended complaint did not relate back to the period before the statute of limitations expired. *Id.*

In *Callicutt*, plaintiff alleged that defendant had both sold and manufactured a motorcycle on which plaintiff was injured. After the limitations period, defendant amended its answer and denied it had manufactured the vehicle. Plaintiff sought to amend its complaint to join the manufacturer. After discussing *Teague*, we held that the record in *Callicutt* did not reveal any evidence "from which the trial court could have concluded that [the manufacturer] had notice of this action prior to plaintiff's motion to add it as a party defendant . . . . [n]or does the record reflect any relationship between defendant and [the manufacturer] to allow us to infer that notice on [defendant] was tantamount to notice on [the manufacturer]." 37 N.C. App. at 212-13, 245 S.E.2d at 560.

*Stevens* involved a malpractice action brought originally against a partnership and against one of the partners individually. Seven years after the alleged tort occurred, plaintiff attempted to amend her complaint to add another partner individually. This partner had actual knowledge of the original suit. Noting that the issue in *Stevens* was one of first impression in this jurisdiction, we examined decisions from New York—after whose Civil Practice Law and Rules our Rule 15(c) is modeled, 82 N.C. App. at 354, 346 S.E.2d at 182—and the federal courts. We held, ultimately, that the statute of limitations was a bar to plaintiff's amendment because 1) plaintiff chose not to sue the partner individually when she filed the initial complaint, 2) plaintiff's delay of seven years before adding the partner in an individual capacity clearly prejudiced him, 3) the partner's participation in the suit had not misled plaintiff with regard to his liability, and 4) N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 4(j)(b)(7) (1983) requires that a partner be served with summons before he is bound beyond his partnership assets. *Id.* at 357, 346 S.E.2d at 184.

We determine from these cases that whether a complaint will relate back with respect to a party defendant added after the applicable limitations period depends upon whether that new defendant had notice of the claim so as not to be prejudiced by the untimely amendment. If some nexus among defendants will permit the trial judge to infer that the new defendant had notice of the original claim so as not to be prejudiced by the amendment, *Callicutt*, 37 N.C. App. at 213, 245 S.E.2d at 560, Rule 15(c) will allow a complaint to be amended so as to add a new party, expiration of the limitations period notwithstanding. The statute of limitations should furnish the defendant a bar, however, when a plaintiff's use of Rule 15(c) would circumvent any other procedural requirement, *see Stevens*, 82 N.C. App. at 352, 346 S.E.2d at 181, or when the plaintiff's failure to name the defendant originally is solely attributable to the plaintiff.

In light of the foregoing, we adopt the federal test, discussed at length in *Stevens* but not explicitly relied upon in that case, for determining when a party defendant may be added after the limitations period has run. Relation back will occur under the federal rule when 1) the basic claim arises out of the conduct set forth in the original pleading, 2) the party to be brought in receives such notice that it will not be prejudiced in maintaining its defense, 3) the party knows or should have known that, but for a mistake concerning identity, the action would have been brought against it, and 4) the second and third requirements are fulfilled within the prescribed limitations period. *Schiavone v. Fortune*, 477 U.S. 21, 29, 91 L.Ed.2d 18, 27 (1986).

Applying the federal test to the present case, we hold that the trial judge correctly ruled that relation back occurred as regarded Medicorp and did not occur in the case of Salem Health. The claim against Medicorp arose from the same conduct alleged in the original complaint. Because Medicorp is the parent corporation and sole owner of Carolina Enterprises and Forsyth, with the same registered agent as its subsidiaries, the same chief executive officer as Forsyth, and is engaged in the same type of enterprise as Forsyth and Carolina Enterprises, Medicorp's "identity of interest" with the originally-named defendants permitted the trial judge to find that Medicorp had such actual or constructive notice of the litigation that it would not be prejudiced in its defense. *See Callicutt*, 37 N.C. App. at 213, 245 S.E.2d at 560; *Stevens*, 82 N.C. App. at 356, 346 S.E.2d at 183; *see also*, C. Wright,

A. Miller & M. Kane, Federal Practice and Procedure Sec. 1499 (Supp. 1989).

Bobbitt alleges that it failed to name Medicorp originally as the consequence of information supplied it by the Office of the Secretary of State that led Bobbitt to believe that "Carolina Medicorp Enterprises, Inc." was the full name of Medicorp. The record indicates that, as of 9 February 1988, defendants' lawyer was aware that Bobbitt believed that "Carolina Medicorp, Inc., or one of its subsidiaries" operated the in-house pharmacy at Blumenthal. Medicorp knew or should have known, therefore, that but for a mistake, it would have been named in the original complaint. Relation back, therefore, was proper in the case of Medicorp.

The same result does not obtain respecting Bobbitt's efforts to join Salem Health. Bobbitt contends it did not name Salem Health originally because "it was not clear that [Salem Health] was anything but a subdivision or arm of the other 'hospital' defendants." Bobbitt's lawyer, however, received a copy of a letter written 1 March 1988 in which defendants' lawyer asked a drug company for information as to "whether or not Salem Health Services got the benefit of any of the contracts [Medicorp] or [Forsyth] had with the manufacturers." We agree with defendants that the record does not demonstrate that Bobbitt's failure to name Salem Health resulted from a "mistake" concerning identity; rather it shows simply an unjustified failure by Bobbitt to name Salem Health in a timely fashion. Salem Health, therefore, could properly assert the statute of limitations as a plea in bar to Bobbitt's effort to join it to the action, and the trial judge did not err in dismissing Salem Health as a party. We overrule this assignment of error.

Bobbitt has additionally alleged that the judge should have exercised his discretion, pursuant to N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 6(b) (1983), to retroactively extend time for issuance of the summons and service on Salem Health because Bobbitt's failure to name Salem Health resulted from "excusable neglect." We reject, at the outset, Bobbitt's assertion that its neglect was "excusable," and we do not address its argument further. This assignment of error is overruled.

## III

[3] Bobbitt assigns error to the trial judge's granting summary judgment for Medicorp, Carolina Enterprises, and Forsyth. Bobbitt

alleges that several genuine issues of material fact still exist in this case, and that there is a need for further discovery concerning these questions. Defendants argue that each of the three counts contained in Bobbitt's complaint is based upon actions allegedly taken by defendants relating to the provision of pharmaceutical services to Blumenthal but that the evidence in the record demonstrates that only Salem Health had any dealings with Blumenthal. Medicorp, Carolina Enterprises, and Forsyth argue, therefore, that summary judgment was appropriate as to them.

Summary judgment is proper only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *E.g., Johnson v. Phoenix Mutual Life Ins. Co.*, 300 N.C. 247, 252, 266 S.E.2d 610, 615 (1980). The remedy of summary judgment should be awarded only when the truth is clear. *E.g., Volkman v. DP Assocs.*, 48 N.C. App. 155, 157, 268 S.E.2d 265, 267 (1980).

Defendants' affidavits aver that Blumenthal approached Salem Health to discuss having the latter provide pharmaceutical supplies because Blumenthal was dissatisfied with services provided by Bobbitt. The forecast of defendants' evidence further shows that Salem Health purchased the pharmaceuticals it sold to Blumenthal, and that Medicorp and Forsyth were never parties to the contract.

A letter from Bobbitt's lawyer to defendants' lawyer is attached to the affidavit of Ernest J. Rabil, Bobbitt's president. The letter says in part that, in 1985, Mr. Rabil inquired of an employee of "either Carolina Medicorp or Forsyth Hospital" how "Carolina Medicorp" was able to service the Blumenthal pharmacy in a cost-effective manner. This employee allegedly responded that the service could be provided "because of preferential hospital pricing." A 1 March 1988 letter written by defendants' lawyer to the drug company from which Salem Health allegedly purchased the pharmaceuticals asks that company "whether or not Salem Health Services got the benefit of any of the contracts [Medicorp] or [Forsyth] had with the manufacturers." The record contains no answer to this question.

Our review of the record discloses no genuine issue of material fact as to the liability of these defendants. Bobbitt's forecast of the evidence does not demonstrate that defendants were involved

to any extent with the Blumenthal contract. The evidence suggests only that Blumenthal's pharmacy may have been serviced in a cost-effective manner because of preferential pricing. Defendants' evidence shows that it was Salem Health, and not any of these defendants, which serviced the pharmacy and which purchased the pharmaceuticals it sold to Blumenthal. There is nothing in the record beyond Bobbitt's allegations to show that Salem Health received preferential pricing because of the involvement of defendants. We hold, therefore, that the judge's entry of summary judgment was correct.

IV

For the foregoing reasons, the judgment of the trial court is

Affirmed.

Chief Judge HEDRICK and Judge ARNOLD concur.