DONALD A. SEAGLE, Administrator of the Estate of Eva M. Seagle, Plaintiff,
v.
MICHAEL TODD CROSS, M.D., ASHEVILLE PULMONARY AND CRITICAL CARE ASSOCIATES, P.A., ASHEVILLE PULMONARY AND CRITICAL CARE ASSOCIATES, P.A., ASHEVILLE PULMONARY ASSOCIATES, P.A., ASHEVILLE PULMONARY ASSOCIATES, P.A., and MISSION-ST. JOSEPH'S HEALTH SYSTEM, INC., Defendants.
No. COA08-911.
Court of Appeals of North Carolina
Filed July 7, 2009
This case not for publication
Long, Parker, Warren & Anderson, P.A., by Steve R. Warren for plaintiff-appellant.
Dameron, Burgin, Parker & Jackson, P.A., by Phillip T. Jackson for defendant-appellees.
ERVIN, Judge.
Donald A. Seagle, Administrator of the Estate of Eva Seagle (Plaintiff), appeals orders: (1) granting summary judgment in favor of Mission-St. Joseph's Health System, Inc. (Defendant); (2) denying Plaintiff's motion to amend his complaint; and (3) denying Plaintiff's motion to join a necessary party. After careful consideration of Plaintiff's arguments, we affirm.

I. Background
On 5 May 2005, Eva Seagle (Seagle) was admitted to a hospital[2] located in Asheville, North Carolina and died three days later.[3] On 24 April 2007, Plaintiff filed his original complaint asserting wrongful death and medical malpractice claims against: (1) Michael Todd Cross, M.D.; (2) Asheville Pulmonary and Critical Care Associates, P.A.; (3) Asheville Pulmonary and Critical Care Associates, P.a.; (4) Asheville Pulmonary Associates, P.A.; (5) Asheville Pulmonary Associates, P.a.; and (6) Mission-St. Joseph's Health System, Inc.[4] On 22 May 2007, Plaintiff amended his original complaint as a matter of right pursuant to N.C. Gen. Stat. § 1A-1, Rule 15(a), in order to include an allegation that MissionS-t. Joseph's Health System, Inc. was also known as Mission Health, Inc.[5]
On the same day, Defendant filed its answer, which denied the material allegations of Plaintiff's complaint and asserted six affirmative defenses, including insufficiency of process and service of process; the absence of a health care provider-to-patient relationship between Seagle and Defendant; failure to state a claim for which relief can be granted; failure to comply with the certification requirement of N.C. Gen. Stat. § 1A-1, Rule 9(j); intervening and/or supervening negligence; and the statute of limitations. In its answer, Defendant noted that Mission-St. Joseph's Health System, Inc., had changed its name to Mission Health, Inc., by means of the filing of Amended and Restated Articles of Incorporation on or about 1 December 2003.
On 24 May 2007, Plaintiff filed a motion to amend his complaint to include Mission Hospitals, Inc. (Mission Hospitals)[6] as a party-defendant.[7] On 31 July 2007, Defendant filed an answer to Plaintiff's amended complaint dated 22 May 2007. In its answer, Defendant denied the material allegations of the amended complaint and advanced the same affirmative defenses raised in its original answer.
On 22 August 2007, Defendant filed a motion for summary judgment on the grounds that it was "not the correct Defendant in that it did not own or operate the Hospital in question, did not credential any of the physicians, and was not the employer of the nurses." Defendant's summary judgment motion was accompanied by three affidavits, to which certain documents were attached. Plaintiff submitted voluminous materials in response to Defendant's summary judgment motion, including copies of pleadings from civil actions filed against Defendant by other parties and copies of corporate records maintained by the Secretary of State.
On 5 March 2008, the trial court conducted a hearing on Defendant's motion for summary judgment and Plaintiff's motion to amend his complaint. On 19 March 2008, the trial court entered two separate orders, the first of which granted Defendant's motion for summary judgment and dismissed Plaintiff's claims against Defendant and the second of which denied Plaintiff's motion to amend his complaint without prejudice.
On 20 March 2008, Plaintiff filed a motion requesting the trial court to reconsider both of the 19 March 2008 orders and a motion to join a necessary party under N.C. Gen. Stat. § 1A-1, Rule 19. On 9 May 2008, the trial court denied Plaintiff's reconsideration and joinder motions and certified its rulings "allow[ing] Defendant's Motion for Summary Judgment, and deny[ing] Plaintiff's Motion to Amend pursuant to Rule 15 and to Join a Necessary Party under Rule 19" for immediate appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). Plaintiff noted a timely appeal to this Court.

II. Interlocutory Nature of the Appeal
As a preliminary matter, we note that Plaintiff's appeal is interlocutory, since Plaintiff's claims against the other defendants remain unresolved. "Interlocutory orders are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court in order to settle and determine the entire controversy." Carriker v. Carriker, 350 N.C. 71, 73, 511 S.E.2d 2, 4, reh'g den., 350 N.C. 385, 536 S.E.2d 70 (1999). An interlocutory order is immediately appealable: (1) if judgment in question is final as to a party or claim and the trial court certifies that there is no just reason to delay the appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) or (2) when the challenged order affects a substantial right that the appellant would lose in the absence of immediate appellate review. Embler v. Embler, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001). In this instance, the trial court certified its prior rulings on Defendant's motion for summary judgment, Plaintiff's motion to amend, and Plaintiff's motion to join a necessary party for immediate appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). Although this Court is not bound by the trial court's certification, we have examined the record and conclude that the trial court's judgment is final as to the claims Plaintiff attempted to assert against Defendant. DKH Corp. v. RankinP-atterson Oil Co., 348 N.C. 583, 585, 500 S.E.2d 666, 667 (1998) ("Rule 54(b) provides that in an action with multiple parties or multiple claims, if the trial court enters a final judgment as to a party or a claim and certifies that there is no just reason for delay, the judgment is immediately appealable."). In this instance, the trial court's order dismissing Plaintiff's claim against Defendant is final as to Defendant, so the prerequisites for review under N.C. Gen. Stat. § 1A-1, Rule 54(b) have been established.[8]

II. Issues
The issues brought forward on appeal are whether the trial court erred by (1) granting Defendant's motion for summary judgment; (2) denying Plaintiff's motion to amend pursuant to Rule 15; and (3) denying Plaintiff's motion to join a necessary party pursuant to Rule 19.

IV. Summary Judgment
Plaintiff argues the trial court erred by granting Defendant's motion for summary judgment on the basis that a genuine issue of material fact exists as to whether Defendant was a proper party and functioned as the "health-care provider" to Seagle from 5 May 2005 through her death on 8 May 2005. Plaintiff further contends that Defendant was estopped from denying that it served as Seagle's health care provider based upon its admission that it served as a health care provider in other proceedings. We disagree.

A. Standard of Review
This Court reviews orders granting summary judgment de novo. Sturgill v. Ashe Mem'l Hosp., Inc., 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), disc. rev. denied, 362 N.C. 180, 658 S.E.2d 662 (2008). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007).
A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. . . .
Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial.
Draughon v. Harnett County Bd. of Educ., 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (internal citations and quotations omitted), aff'd, 358 N.C. 131, 591 S.E.2d 521 (2004). In considering a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party. Summey v. Barker, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citation omitted).

B. Analysis
"[I]t is well settled that the relationship of health-care provider to patient must be established to maintain an actionable claim for medical malpractice." Massengill v. Duke University Medical Center, 133 N.C. App. 336, 338, 515 S.E.2d 70, 72 (1999) (citing Easter v. Lexington Mem. Hosp., 303 N.C. 303, 305, 278 S.E.2d 253, 255 (1981)). The term "health care provider" has been statutorily defined as
without limitation any person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, psychology; or a hospital or a nursing home; or any other person who is legally responsible for the negligence of such person, hospital or nursing home; or any other person acting at the direction or under the supervision of any of the foregoing persons, hospital, or nursing home.
N.C. Gen. Stat. § 90-21.11 (2005). The ultimate question raised by Plaintiff's appeal is whether Plaintiff has forecast sufficient evidence tending to show that Defendant was functioning as a health care provider in connection with the treatment that Seagle received in the days leading up to her death on 8 May 2005. Easter, 303 N.C. at 305-306, 278 S.E.2d at 255 ("[I]t is well-settled that the relationship of physician to patient must be established as a prerequisite to an actionable claim for medical malpractice.").
In support of its motion for summary judgment, Defendant submitted three affidavits. Gary Bruce (Bruce), a staff attorney for Mission Hospitals, averred that, from 5 May 2005 through 8 May 2005, there was no health care provider to patient relationship between Seagle and Defendant and that the hospital facility in which Seagle received treatment was operated by Mission Hospitals, Inc. Bruce further averred that the nurses employed by the hospital at which Seagle received treatment were employees of Mission Hospitals. In addition, Defendant submitted affidavits from Barbara Gordesky, Director of Medical Affairs and Physician Relations with Mission Hospitals (Gordesky), and Brian Moore, Director of Strategic Planning and Public Relations for Mission Hospitals (Moore). The Gordesky and Moore affidavits, between them, supported Defendant's assertions that (1) the hospital facility where Seagle was treated was operated by Mission Hospitals; (2) Defendant and Mission Hospitals, Inc. were separate and distinct corporate and legal entities; and (3) the physicians practicing at the facility operated by Mission Hospitals were credentialed by Mission Hospitals and not Defendant. Thus, Defendant forecast ample evidence tending to show that there was no patient to health care provider relationship between Seagle and Defendant.
In light of Defendant's showing, the burden shifted to Plaintiff to forecast evidence demonstrating specific facts, as opposed to mere allegations, tending to show that Defendant provided health care services to Seagle. Draughon, 158 N.C. App. at 212, 580 S.E.2d at 735. In an effort to meet this burden, Plaintiff submitted several different types of materials for the trial court's consideration.
First, Plaintiff points to Defendant's Amended and Restated Articles of Incorporation, which state that "[t]he purpose or purposes for which the Corporation is organized are: (a) To be organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of, Memorial Mission Hospital, Inc. . . ." Plaintiff also relies on language contained in a first amended Certificate of Public Advantage ("COPA") issued on 8 October 1998 to the effect that "Memorial Mission Hospital, Inc. and St. Joseph's Hospital, . . . operate under common management in an enterprise currently named `Mission-St. Joseph's Health System, Inc.'" Plaintiff argues that, based upon these materials, "sufficient evidence was forecast as the genuine issue of Mission-St. Joseph's Health System, Inc.'s performing the function of Mission Hospital, Inc."
However, these materials overlook the fact that the corporate records maintained by the Secretary of State indicate that MissionS-t. Joseph's Health System, Inc. had "merged" with Memorial Mission Medical Center, Inc., to form Mission Health, Inc., and that its registered office had been "discontinued" by the time of Seagle's death.[9] Furthermore, the language upon which Plaintiff relies from the first amended COPA is noticeably absent from the second amended COPA, which appears from its contents to have been issued subsequent to the merger and name change that were effective 1 December 2003.[10] The second amended COPA defines Mission Health, Inc. and Mission Hospitals, Inc. separately:
1. "Mission Health, Inc." refers to Mission Health, Inc., successor in title to MissionS-t. Joseph's Health System, Inc., the entity created by Memorial Mission Hospital, Inc., and St. Joseph's Hospital to provide common management to both facilities, and later merged with and into Memorial Mission Medical Center, Inc., the name of which was then changed to Mission-St. Joseph's Health System, Inc.
. . . .
6. "Mission Hospitals, Inc." is a tax-exempt nonprofit charitable organization that owns the Memorial and St. Joseph's hospital facilities in Asheville.
As a result, the relevant corporate and regulatory documents unequivocally tend to show that Defendant and Mission Hospitals, Inc., are two separate and distinct corporate entities, that the hospital in which Seagle received care was owned by Mission Hospitals, and that Defendant was, at most, the member and manager of Mission Hospitals. The fact that Defendant may have been Mission Hospital's sole member and that Defendant managed Mission Hospitals simply does not, standing alone, tend to show the existence of a health care provider to patient relationship between Seagle and Defendant of the type necessary to support a medical negligence action against Defendant. Diggs v. Novant Health, Inc., 177 N.C. App. 290, 298, 628 S.E.2d 851, 857 (2006).
Plaintiff further asserts that Ms. Seagle's hospital chart makes "undisputed reference[s]" to "Mission-Saint Joseph's." However, Plaintiff appears to overlook the fact that, directly beneath the reference to "Mission-St. Joseph's" (which is not Defendant's exact name), the following words appeared: "Memorial Mission Hospital, Asheville, NC 28801." Moreover, the "Consent and Authorization Form" signed by Plaintiff contained the following language:
1. CONSENT FOR EMERGENCY TREATMENT. Authorization is granted for such treatment and procedures and for admission to Memorial Mission Hospital ("Hospital")[.] . . .
2. CONSENT TO TREATMENT UPON ADMISSION. I authorize Memorial Mission Hospital personnel to perform on me the care ordered by my physicians. . . .
(emphasis supplied). The consent form also contained six other provisions, each of which specifically refer to "Memorial Mission Hospital." These references to "Mission-St. Josephs" and "Memorial Mission Hospital" cannot be read as equivalent to Defendant's corporate name. Furthermore, none of these documents in any way tend to show that Seagle had a health care provider to patient relationship with Defendant. As a result, Plaintiff has failed to show that these documents, individually or collectively, sufficed to demonstrate the existence of a genuine issue of material fact as to whether Defendant functioned as Seagle's health care provider in the days leading up to her death.
In addition to his reliance on this documentary evidence, Plaintiff argues Defendant is judicially estopped from denying that it was a "health-care provider" at the time of Seagle's death based upon prior admissions contained in responsive pleadings in other legal actions. We do not find this argument persuasive.
The essential purpose of the doctrine of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 28, 591 S.E.2d 870, 888 (2004) (internal citation and quotation omitted). In Whitacre P'ship, the Supreme Court described the elements that must be established in order for a party to be judicially estopped:
First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
Id. at 29, 591 S.E.2d at 888 (internal citation and quotation omitted). In addition, this Court has stated that
"judicial estoppel forbids a party from asserting a legal position inconsistent with one taken earlier in the same or related litigation. The doctrine prevents the use of intentional self-contradiction . . . as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."
Price v. Price, 169 N.C. App. 187, 191, 609 S.E.2d 450, 452 (2005) (citation and quotations omitted) (emphasis supplied). Accordingly, in order to determine whether the doctrine of judicial estoppel has any application to this case, we must first decide whether Defendant's position in the case at bar is clearly inconsistent with one taken earlier in the same or related litigation. If it is, then we will move on to a consideration of the other elements needed to show the existence of judicial estoppel according to established North Carolina law.
Plaintiff's claim that Defendant is judicially estopped from denying that it had a health care provider to patient relationship with Seagle relies on a series of pleadings from other proceedings in which it was alleged or admitted that Defendant provided health care services. "While a pleading can serve as a judicial admission, it is important to note that such is not invariably the case." Contractors, Inc. v. Forbes, 302 N.C. 599, 606, 276 S.E.2d 375, 379 (1981) (citation omitted). The Supreme Court explained almost three decades ago that:
[f]inal pleadings which define the issues to be litigated and upon which the case goes to trial can embody a judicial admission of a matter and serve to conclusively remove the establishment of that fact from the issues which are to be tried. Other pleadings, including pleadings in another case, amended pleadings, withdrawn pleadings in the same case, and collateral pleadings which serve some purpose other than the defining of issues, do not amount to judicial admission which are conclusive as to the matters contained therein. Such pleadings may be utilized by a party to litigation as evidential admissions in precisely the same way as if it had been embodied in some other form.
Id. (internal citation omitted). As a result, admissions in pleadings in cases other than this one amount, at most, to evidential admissions instead of having the effect of a judicial admission. However, since evidential admissions might well suffice to show the existence of the sort of genuine issue of material fact needed to thwart a request for summary judgment, we will proceed to evaluate the pleadings upon which Plaintiff relies.
On appeal, Plaintiff points to admissions in pleadings in five unrelated cases in support of its claim that Defendant is judicially estopped from denying that Defendant was Seagle's health care provider at the time of her death. A careful examination of these pleadings, however, shows that they do not suffice to establish the existence of a genuine issue of material fact as to whether a health care provider-to-patient relationship existed between Seagle and Defendant at the time of her death.
First, Plaintiff argues that "Mission Health, Inc. (formerly Mission-St. Joseph's Health System, Inc.) . . . admitted that it operated and maintained a licensed hospital facility in Asheville, North Carolina and was a `health care provider'" in the case of Meredith v. Mission Hospitals, Inc. (Meredith). In Meredith, the plaintiffs named Memorial Mission Hospital, Inc.; Mission Hospitals, Inc.; Mission-St. Joseph's Health System, Inc.; and Mission Health, Inc., as parties defendant. Although the defendants in Meredith admitted that Mission Health owned and operated a hospital and was a health care provider, they specifically denied that Mission-St. Joseph's Health System, Inc.: (1) was a corporation licensed and doing business in Asheville, North Carolina; (2) owned, operated, and maintained a licensed hospital facility and provided a variety of medical and health care treatment services to patients; and (3) was a health care provider pursuant to N.C. Gen. Stat. § 90-21.11. As a result, the pleadings in Meredith provide, at best, only equivocal support for Plaintiff's contention that Defendant operated a hospital and functioned as a health care provider.
Secondly, Plaintiff cites an answer filed in Akins v. MissionS-t. Joseph's Health System, Inc. (Akins), in which Mission-St. Joseph's Health System, Inc., admitted it was a corporation authorized to do business in North Carolina in the form of providing health and medical services. In addition, Defendant admitted "upon information and belief" that Mission St. Joseph's Hospital was "owned and/or operated by" Defendant at the time of the male plaintiff's admission on 2 July 2000. As a result of the nearly five year difference between the male plaintiff's admission as described in the Akins complaint and Seagle's death on 8 May 2005 and the fact that Defendant's admission in Akins was made on the basis of "information and belief," we do not believe that Akins provides any support for an argument that Seagle had a health care provider-to-patient relationship with Defendant at the time of her death.
Plaintiff's remaining arguments rely on allegations admitted in Ayers v. Asheville Surgery Center (owned by)  Mission-St. Joseph's Memorial Mission Hospital (Ayers), McConnell v. MissionS-t. Joseph's Hospital (McConnell), and Robertson v. Mission Hospitals, Inc. d/b/a Mission-St. Joseph's Hospital (Robertson). However, we note that Defendant was not named as a party-defendant in any of these cases and that no admissions to the effect that Defendant owned and operated a hospital appear in the pleadings filed in those proceedings. For that reason, these cases do not advance Plaintiff's argument that there was a health care provider-to-patient relationship between Seagle and Defendant.
Aside from the specific difficulties posed for Plaintiff's argument based on the facts of these five cases, there is one overarching problem with Plaintiff's argument that precludes reliance on these pleadings to defeat Defendant's request for summary judgment. As we have already noted, in order to sustain a claim against Defendant, Plaintiff has to provide evidence that Seagle had a health care provider-to-patient relationship with Defendant in the days leading up to and at the time of her death. In other words, in order to support a finding of liability against Defendant, Plaintiff had to forecast evidence tending to show that Defendant's agents, servants, or employees were involved in the conduct upon which Plaintiff predicates his claim. As we understand the record, the legal position that Defendant has asserted in this case is simply not inconsistent with the positions asserted in the other cases to which Plaintiff makes reference, since none of them involve the provision of medical services to Seagle[11] by agents, servants, or employees of Defendant. Price, 169 N.C. App. at 191, 609 S.E.2d at 452. Put another way, nothing in the pleadings in the five unrelated cases upon which Plaintiff relies tends to show that Defendant was in any way involved in or responsible for "contact[ing] necessary physicians during the course of Seagle's stay;" "communicat[ing] to [Seagle's] physicians the status of medical interventions that had taken place;" or "ensur[ing] that its credentialed physicians had a clear understanding of the significance of entries within [Seagle's] chart[,] including[,] but not limited to, the Medication Administration Record" as alleged in the complaint. See Diggs, 177 N.C. App. at 298, 628 S.E.2d at 857 (holding that a hospital management company was entitled to summary judgment in a medical negligence action where plaintiff presented no evidence rebutting the management company's showing that "`all of the employees of Forsyth Medical Center . . . are employed by Forsyth Memorial Hospital, Inc.'"). As a result, even if Defendant had clearly and unequivocally admitted providing health care services to the plaintiffs in the five cases in question, that fact would merely provide evidence that Defendant had provided health care services to a group of individuals other than Seagle. Since Plaintiff has to show that agents, servants, or employees of Defendant were involved in the provision of health care services to Seagle in order for Plaintiff to obtain a recovery from Defendant, evidence that Defendant may have operated a hospital facility and provided such services to other persons through its agents, servants and employees simply does not suffice to rebut Defendant's forecast of evidence that it was not involved in the provision of health care services to Seagle. Thus, Plaintiff's reliance on the pleadings in Akins, Ayers, McConnell, Meredith, and Robertson does not suffice to create the sort of genuine issue of material fact needed to withstand Defendant's request for summary judgment.
After careful consideration, we conclude that none of the materials which Plaintiff submitted to the trial court sufficed to create a genuine issue of material fact regarding the extent to which there was a health care provider-to-patient relationship between Seagle and Defendant in the days leading up to and at the time of her death. Thus, since Plaintiff has failed to forecast evidence tending to rebut a showing of the non-existence of an essential element of his claim, the trial court correctly granted summary judgment in favor of Defendant. Draughon, 158 N.C. App. at 212, 580 S.E.2d at 735.

V. Rule 15 Motion to Amend
In his third assignment of error, Plaintiff argues that the trial court erred by denying his motion to amend his complaint to add Mission Hospitals, Inc. as a party-defendant pursuant to N.C. Gen. Stat. § 1A-1, Rule 15. However, Plaintiff's notice of appeal states:
Plaintiff, Donald A. Seagle, Administrator of the Estate of Eva M. Seagle, hereby gives Notice of Appeal to [t]he North Carolina Court of Appeals, pursuant to Rule 3 of The North Carolina Rules of Appellate Procedure, from the final Order of Certification Pursuant to Rule 54 of the North Carolina Rules of Civil Procedure, entered on May 9, 2008, in the Superior Court of Buncombe County, which denied the Plaintiff's Motion for Reconsideration of Summary Judgment and Motion to Amend and Motion to Join Party under Rule 19, and, further, which allowed Defendant's Motion for Summary Judgment, denied Plaintiff's Motion to Amend pursuant to Rule 15 and To Join a Necessary Party under Rule 19, and further, hereby gives Notice of Appeal to [t]he North Carolina Court of Appeals from the underlying Order of Summary Judgment in favor of Mission-St. Joseph's Health System, Inc. (n/k/a Mission Health, Inc.) which granted Summary Judgment in favor of said Defendant entered March 19, 2008.
In his notice of appeal, Plaintiff incorrectly describes the 9 May 2008 order as the one in which Plaintiff's motion to amend was denied. On the contrary, the 9 May 2008 order denied Plaintiff's: (1) motion for reconsideration of the trial court's orders granting summary judgment in Defendant's favor and denying Plaintiff's motion to amend and (2) motion to join a necessary party. The trial court further certified its prior rulings for immediate appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54, in that order.
As a result, at least with respect to the denial of his motion to amend, Plaintiff failed to "designate the judgment or order from which appeal is taken" as is required by N.C. R. App. P. 3(d) (2008).[12] "In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 . . . . The provisions of Rule 3 are jurisdictional, and failure to follow the rule's prerequisites mandates dismissal of an appeal." Bailey v. State, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000) (internal citations omitted)). In addition, the Supreme Court has held that N.C. R. App. P. 2 may not be invoked to reach the merits of a case in instances in which the appellate court lacks jurisdiction to review a particular decision. Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., 362 N.C. 191, 198, 657 S.E.2d 361, 365 (2008) (citation omitted). As a result, this Court lacks jurisdiction to review Plaintiff's challenge to the trial court's denial of his motion to amend as a matter of right. Id.
However, this Court does have the authority to treat the record on appeal, in which Plaintiff assigned the denial of his motion to amend as error, as a petition for a writ of certiorari pursuant to N.C. R. App. P. 21(a)(1), to grant the petition, and to then review Plaintiff's challenge to the trial court's denial of his motion to amend on the merits. Anderson v. Hollifield, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) ("[W]e conclude that Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner."). We elect to act in this manner in the exercise of our discretion in this case so as to review the trial court's order denying Plaintiff's motion to amend on the merits.
"It is a fundamental concept of [N.C. Gen. Stat. § 1A-1, Rules 15(a) and 15(b)] that amendments to pleadings should be liberally allowed." Goodrich v. Rice, 75 N.C. App. 530, 533, 331 S.E.2d 195, 198 (1985). "Discretion in the trial court is not unlimited, however, and the amendment should not be granted when the opposing party would be prejudiced." Roper v. Thomas, 60 N.C. App. 64, 68, 298 S.E.2d 424, 427 (1982). In other words, "[w]hile leave of court shall be freely given when justice so requires . . . judicial discretion may properly be exercised to subordinate these concerns to readily discernible countervailing legislative intent." Jones v. Boyce, 60 N.C. App. 585, 587, 299 S.E.2d 298, 300 (1983). (internal citations and quotations omitted.) Among the reasons that "would justify a denial [of a motion to amend] are bad faith, futility of amendment, and repeated failures to cure defects by previous amendments." Delta Environmental Consultants of North Carolina, Inc., v. Wysong & Miles Co., 132 N.C. App. 160, 166, 510 S.E.2d 690, 694 (1999). "[O]ur standard of review for motions to amend pleadings requires a showing that the trial court abused its discretion." Id. at 165, 510 S.E.2d at 694.
As a result of the fact that Seagle died on 8 May 2005 and the fact that Plaintiff's amendment motion was filed on 24 May 2007, any claims asserted in the proposed amendment would be barred by the two-year statue of limitations for wrongful death claims set out in N.C. Gen. Stat. § 1-53(4) unless those claims were deemed to relate back to the date upon which Plaintiff filed his original complaint. In the event that the proposed amendment would not relate back to the time of the filing of the original complaint, the trial court would have properly barred the proposed amendment on futility grounds.
N.C. Gen. Stat. § 1A-1, Rule 15(c) provides, in pertinent part:
A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.
N.C. Gen. Stat. § 1A-1, Rule 15 (2007). Thus, an amended claim relates back to the date of the filing of the original complaint in the event that the original complaint provided adequate notice of the transactions and occurrences underlying the amended claim.
Although this Court at one time treated claims asserted against new parties in amended pleadings as relating back to the filing of the original complaint, that view has been decisively rejected by the Supreme Court. In Crossman v. Moore, the Supreme Court stated that:
When the amendment seeks to add a party-defendant or substitute a party-defendant to the suit, the required notice cannot occur. As a matter of course, the original claim cannot give notice of the transactions or occurrences to be proved in the amended pleading to a defendant who is not aware of his status as such when the original claim is filed. We hold that this rule does not apply to the naming of a new party-defendant to the action. It is not authority for the relation back of a claim against a new party.
341 N.C. 185, 187, 459 S.E.2d 715, 717 (1995) (emphasis added). This Court has repeatedly construed Crossman to "mean that Rule 15(c) is not authority for the relation back of claims against a new party, but may allow for the relation back of an amendment to correct a mere misnomer." Liss v. Seamark Foods, 147 N.C. App. 281, 283, 555 S.E.2d 365, 367 (2001) (quoting Piland v. Hertford County Bd. of Comm'rs, 141 N.C. App. 293, 299, 539 S.E.2d 669, 673 (2000)); see also Bob Killian Tire, Inc. v. Day Enters., Inc., 131 N.C. App. 330, 331, 506 S.E.2d 752, 753 (1998). Thus, unless "Mission-St. Joseph's Health System, Inc." can be construed as a misnomer for "Mission Hospitals, Inc.," any claim asserted in the amended complaint against Mission Hospitals would be barred by N.C. Gen. Stat. § 1-53(4).
A similar issue was addressed by this Court in Franklin v. Winn Dixie Raleigh, Inc., 117 N.C. App. 28, 450 S.E.2d 24 (1994), aff'd, 342 N.C. 404, 464 S.E.2d 46 (1995). In Franklin, the plaintiff's original complaint designated "Winn Dixie Stores, Inc." as the defendant. Id. at 34, 450 S.E.2d at 27. Shortly thereafter, the plaintiff learned that the store in question was actually owned by Winn-Dixie Raleigh, Inc. Id. at 34-35, 450 S.E.2d at 27. As a result, the plaintiff sought to amend his complaint to designate "Winn-Dixie Raleigh, Inc." as the defendant in lieu of Winn-Dixie Stores, Inc. Id. However, this Court determined that "Winn-Dixie Stores, Inc. and Winn-Dixie Raleigh, Inc., . . . ha[d] been and were separate and distinct corporations at the time the cause of action accrued" and held that the proposed amendment did not relate back, stating that, "[q]uite simply, [the] plaintiffs sued the wrong corporation." Id. at 34-35, 450 S.E.2d at 28.
In this case, as in Franklin, Moore's affidavit established that Defendant and Mission Hospitals were separate and distinct corporate entities as of the date of the filing of Plaintiff's complaint. Moreover, records maintained by the Secretary of State showed that Mission-St. Joseph's Health System, Inc. had "merged" with Memorial Mission Health Center, Inc., and that its registered office had been "discontinued." For that reason, we are unable to distinguish the facts present here from those in Franklin. As a result, it is clear that any claim asserted by Plaintiff against Mission Hospitals in its amended pleading would have been time-barred, rendering the amendment subject to denial on futility grounds. Thus, the trial court did not abuse its discretion by denying Plaintiff's motion to amend.

VI. Rule 19 Motion to Join a Necessary Party
Finally, Plaintiff argues that the trial court erred by denying his motion to join a necessary party pursuant to N.C. Gen. Stat. § 1A-1, Rule 19. N.C. Gen. Stat. § 1A-1, Rule 19 provides, in pertinent part:
(a) Necessary joinder.  Subject to the provisions of Rule 23, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of anyone who should have been joined as plaintiff cannot be obtained he may be made a defendant, the reason therefor being stated in the complaint; provided, however, in all cases of joint contracts, a claim may be asserted against all or any number of the persons making such contracts.
(b) Joinder of parties not united in interest.  The court may determine any claim before it when it can do so without prejudice to the rights of any party or to the rights of others not before the court; but when a complete determination of such claim cannot be made without the presence of other parties, the court shall order such other parties summoned to appear in the action.
The fundamental issue raised by Plaintiff's motion to join a necessary party is essentially the same as the issue raised by his motion to amend in that both motions involve efforts by Plaintiff to have Mission Hospitals joined as a party-defendant and have the claims that he sought to assert against Mission Hospitals deemed to relate back to the date of the filing of the original complaint.
On appeal, Plaintiff contends that Mission Hospitals was a "necessary party" to this proceeding[13] and that there was a "unity of interest" between Defendant and Mission Hospitals given that Defendant was the sole member of Mission Hospitals and that Defendant had been organized to perform the functions of Mission Hospitals. Plaintiff cited certain New York decisions in support of the proposition that, where such a "unity of interest" is established, the addition of new parties and the relation back of claims asserted against the new parties is permissible. According to Plaintiff, an amended complaint should be deemed to relate back to the date of the filing of the original complaint where the following elements are present:
(1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is `united in interest' with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.
Buran v. Coupal, 87 N.Y.2d 173, 178, 661 N.E.2d 978, 981, 638 N.Y.S.2d 405, 408 (N.Y. 1995) (quoting Brock v. Bua, 83 A.D.2d 61, 69, 443 N.Y.S.2d 407, 412 (1981)).
The approach advocated by Plaintiff is not, however, consistent with established North Carolina law. In Ring Drug Co. v. Carolina Medicorp Enterprises, this Court adopted the federal test for determining when a party-defendant may be added after the statute of limitations has run. 96 N.C. App. 277, 283, 385 S.E.2d 801, 806 (1989). The test adopted by this Court in Ring was substantially similar to the test Plaintiff urges us to adopt in this case, since it provided that:
Relation back will occur under the federal rule when 1) the basic claim arises out of the conduct set forth in the original pleading, 2) the party to be brought in receives such notice that it will not be prejudiced in maintaining its defense, 3) the party knows or should have known that, but for a mistake concerning identity, the action would have been brought against it, and 4) the second and third requirements are fulfilled within the prescribed limitations period.
Id. (citing Schiavone v. Fortune, 477 U.S. 21, 29, 91 L. Ed. 2d 18, 27 (1986)). Subsequently, our Supreme Court expressly disavowed the use of such a test. See Crossman, 341 N.C. at 18788, 459 S.E.2d at 717. The Court stated in Crossman that:
In Ring . . . the Court of Appeals allowed an amendment naming a new party to relate back to the filing of the complaint. We overrule the holding in Ring, and do not approve of the rationale of the other three cases so far as they are inconsistent with the reasoning of this opinion.
Id. As a result, the decisions upon which Plaintiff relies are simply not consistent with established North Carolina law. Furthermore, while both parties focus their arguments on the relation back doctrine that is applicable under N.C. Gen. Stat. § 1A-1, Rule 15(c), we have found no evidence of the existence of any sort of relation back doctrine under N.C. Gen. Stat. § 1A-1, Rule 19. As a result, even if the trial court had granted Plaintiff's motion to join Mission Hospitals as a party-defendant under N.C. Gen. Stat. § 1A-1, Rule 19, Plaintiff's claims would still be time-barred. See N.C. Gen. Stat. § 1-53(4) (2007). Thus, the trial court did not err by denying Plaintiff's motion to join a necessary party.

VII. Conclusion
For the foregoing reasons, the trial court's orders: (1) granting summary judgment in favor of Defendant under N.C. Gen. Stat. § 1A-1, Rule 56; (2) denying Plaintiff's motion to amend under N.C. Gen. Stat. § 1A-1, Rule 15; and denying Plaintiff's motion to join a necessary party under N.C. Gen. Stat. § 1A-1, Rule 19, should be affirmed. Although identifying the correct entity against which to file suit in this case was inevitably rendered difficult by the existence of many different, similarly-named, corporate entities that are somehow related to Mission Hospital and while the Court tends to agree with the comments of a Magistrate Judge in the United States District Court for the Western District of North Carolina to the effect that "confusion as to the proper name of the Defendant is understandable," we have no choice but to conclude that Plaintiff "sued the wrong corporation." Franklin, 117 N.C. App. at 35, 450 S.E.2d at 28. As a result, the trial court's rulings are hereby affirmed.
AFFIRMED.
Judges WYNN and GEER concur.
Report per Rule 30(e).
NOTES
[2] A principal matter of dispute at issue in connection with this appeal is the corporate identity of the entity responsible for providing care to Seagle in the period immediately prior to her death.
[3] The exact nature of the events leading up to Seagle's death do not affect the proper resolution of the issues before the Court arising from Plaintiff's appeal, so we will refrain from discussing the merits of Plaintiff's claim in any detail in this opinion.
[4] According to the original complaint, Defendant was "a North Carolina corporation having been duly incorporated under the laws of the State of North Carolina, and which at all relevant times herein was acting by and through its duly authorized officers, agents, and employees including nursing staff attending to Seagle. Plaintiff contended that Defendant was negligent by "failing to contact necessary physicians during the course of [Seagle's] stay;" "failing to appropriately communicate to [Seagle's] physicians the status of medical interventions that had taken place;" and "failing to ensure that its credentialed physicians had a clear understanding of the significance of entries within [Seagle's] chart[,] including[,] but not limited to, the Medication Administration Record."
[5] Plaintiff's amendment stated, in pertinent part, "[t]hat said defendant is currently listed as being an `active' corporation with the North Carolina Secretary of State's office, as shown on the attached Exhibit `A' which is incorporated herein by reference as if fully set out, and further, which corporation is the surviving corporation resulting from the merger of Mission-St. Joseph's Health System, Inc. and Memorial Mission Medical Center, Inc. That said corporation is also known as `Mission Health, Inc.'"
[6] Mission Hospitals was formerly known as Memorial Mission Hospital, Inc.
[7] The proposed amendment read, in pertinent part, "[t]hat in addition, Mission Health, Inc. and/or Mission St. Joseph's Health System, Inc. `includes the entity known as `Mission Hospitals,' otherwise known as Mission Hospitals, Inc. and as the agent and/or alter ego of, the Defendant Mission Health, Inc., had due notice of the events and transactions, as alleged in this Complaint, and is liable for said acts and omissions as alleged within this Complaint."
[8] Although the trial court certified its decisions denying Plaintiff's motion to amend and to add a necessary party as well, N.C. Gen. Stat. § 1A-1, Rule 54(b) only allows certification of final judgments against parties or as to particular claims. However, since the issues raised by the trial court's denial of Plaintiff's motions to amend and to add a necessary party are inherently implicated in the issues raised by the trial court's decision to grant summary judgment as to Plaintiff's claim against Defendant, we will, in the exercise of our discretion, treat the record on appeal as a petition for the issuance of a writ of certiorari pursuant to N.C. R. App. P. Rule 21 to the extent that these orders are not reviewable in connection with our examination of the correctness of the trial court's decision to enter judgment in favor of Defendant in this case.
[9] Plaintiff argues that the Secretary of State's records did not reflect this change in Defendant's status until after Seagle's death. However, the possible existence of an error in the Secretary of State's records due to inadequate updating or some other cause, while regrettable, does not provide evidence upon which a trial judge is entitled to make a factual determination at odds with what the facts actually are.
[10] Plaintiff asserts in his brief that the second COPA was issued on 22 June 2005, one month after Seagle's death. However, the record does not confirm or dispel this assertion. Instead the record simply does not definitively state the date upon which the second amended COPA was issued. Furthermore, as noted in the text, the second amended COPA appears from its contents to have been issued subsequent to the 1 December 2003 merger and name change.
[11] The same logic precludes the Court from finding that the necessary genuine issue of material fact arises from the Yellow Pages ad and website page upon which Plaintiff relies.
[12] In view of the fact that the only assignment of error directed to the amendment issue makes no reference to the order denying Plaintiff's request for reconsideration, we are unable to reach the merits of Plaintiff's challenge to denial of his motion to amend by means of his challenge to the denial of his reconsideration motion. N.C. R. App. P. 10.
[13] It is not clear to us why Mission Hospitals would be a necessary party to this litigation, since a valid judgment can be entered against the other defendants without consideration of the extent, if any, to which Mission Hospitals is liable to Plaintiff. Wall v. Sneed, 13 N.C. App. 719, 187 S.E.2d 454 (1972). Furthermore, the Court questions whether Mission Hospitals is a proper party, since its interest will not be affected by the extent to which Plaintiff obtains a damage award against the other defendants. Cosrol Carding Devs., Inc. v. Gunter & Cooke, Inc., 12 N.C. App. 448, 183 S.E.2d 834 (1971). However, given that we have opted to decide the issues raised by Plaintiff's challenge to the trial court's denial of his motion for joinder pursuant to N.C. Gen. Stat. § 1A-1, Rule 19 on other grounds, it is not necessary for us to definitively resolve these issues.